AMERICAN FREEHOLD LAND MORTGAGE COMPANY OF LONDON, LIMITED, v. R. L. BROWN ET AL.

Decided March 17, 1909.

### 1.—Charge—Allegations Unsupported by Evidence.

An instruction authorizing a verdict for plaintiff upon a finding from the evidence that defendant had committed any of the wrongs alleged in the petition is not ground for reversal, as submitting issues unsupported by the evidence though the petition contained allegations which there was no evidence to prove, where elsewhere the charge expressly withdrew from consideration all matters pleaded on which no evidence was introduced.

### 2.—Charge—Requested Instruction.

Refusal of instructions withdrawing certain elements of damages from consideration, though it would have been correct to give them, is held no ground for reversal, where from the general course of the trial and the charge given, the jury could not be presumed to have considered such excluded matters in awarding damages.

### 3.—Argument of Counsel—Objection.

Where improper argument of counsel was not objected to when made, but was replied to by counsel in argument, it is not ground for reversal though urged in a motion for new trial.

### 4.—Conspiracy to Injure Business—Damages.

Evidence considered and held to support a recovery of $40,000 actual, and $10,000 exemplary damages for conspiracy to destroy plaintiff's business and acts done and false statements circulated for that purpose.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Gano, Gano & Gano, Sleeper & Kendall* and *J. E. Yantes,* for appellant.—Where there is no evidence upon an essential issue in the case, or where the evidence is such that reasonable minds could not draw different conclusions respecting the particular issue, the mattter should not be submitted to the jury. Here proof that the defendant company, through its controlling officers, formed a plan, design or scheme to break the plaintiffs up in business or to injure them in their business as loan agents, was necessary to their case; and not only were the circumstances such that no reasonable mind could conclude that all things were done, but there was in fact no evidence whatever in support of that issue. Joske v. Irvine, 91 Texas, 581; Lee v.

Railway Co., 89 Texas, 583; Railway Co. v. Gasscamp, 69 Texas, 547; A. T. & T. Co. v. Kersh, 66 S. W., 74; Scripture v. S. A. M. Co., 20 Texas Civ. App., 153; Ivey v. Bondies, 44 S. W., 916; Railway Co. v. Griffith, 159 U. S., 603; Railway Co. v. Ives, 144 U. S., 417; Griggs v. Houston, 14 Otto (U. S.), 553.

The court erred in refusing to give special charge No. 34 requested by defendant upon the trial of said cause, to wit: "If you believe from the evidence that the English & Scottish American Mortgage & Investment Company, Limited, withdrew its business from plaintiffs on account of the bad business done for it by plaintiffs, or in its discretion for any other reason, and not because of any false and malicious statements derogatory to plaintiffs, made by the defendant company, its agents or representatives, you will not consider the loss of said company by plaintiffs in arriving at your verdict." There was evidence that plaintiffs made many bad loans upon insufficient security and bad titles for their companies, and were extravagant in their expenditures of money in connection with real estate owned by their principals, as a result of which there were general rumors that plaintiffs were careless and incompetent loan agents; and if plaintiffs' business as loan agents was damaged by such general rumors so caused or brought about, defendant was not responsible for such damage to plaintiffs' business, and the jury should have been so charged. Railway Co. v. Ayers, 83 Texas, 268; International & G. N. Ry. v. Jackson, 47 Texas Civ. App., 26; Texas & P. Ry. v. Dawson, 34 Texas Civ. App., 240; Missouri, K. & T. Ry. v. Renfro, 83 S. W., 21; Southern Const. Co. v. Hinkle, 89 S. W., 309; Railway Co. v. McGlamory, 89 Texas, 635; Railway Co. v. Kiersy, 98 Texas, 590.

The loss of income in a business can only be recovered upon account of a tort inflicted where the business is an established and regular business, and the decrease can be shown to have resulted from the particular tort in question, and is ascertainable. The loss of income from a business which is irregular or fluctuates or is liable to change is too remote and speculative to be recoverable. Alamo Mills Co. v. Hercules Iron Works, 1 Texas Civ. App., 683; Houston & T. C. Ry. Co. v. Hill, 63 Texas, 381; Central Coal Co. v. Hartman, 49 C. C. A., 244; New York, etc., Co. v. Fraser, 130 U. S., 611; Tisdale v. Major, etc., 68 Am. St. Rep., 272; Casper v. Klippen, 52 Am. St. Rep., 604; States v. Durkin, 68 Pac., 1091; Kenyon v. Western U. Tel. Co., 35 Pac., 75; Weis v. Whitmore, 28 Mich., 366; Smith v. Barnard, 63 N. Y., 281; People's, etc., Ry. Co. v. Louderback, 4 Pa., 406; Williams v. Wood, 55 Minn., 323; Surmer v. St. Paul, 23 Minn., 408; Marble v. Worcester, 4 Gray, 395.

In an action for damages to one's business from alleged acts done or statements made, such damage can not be presumed to have resulted from such acts or statements, but the plaintiff, to recover, must affirmatively show, not only that such acts were done and such statements made, but that actual damage to the plaintiffs' business resulted therefrom. Brown v. American Freehold Co., 81 S. W., 824; 1 Sutherland, Damages, p. 51 (1884 ed.); 8 Eng. & Am. Ency Law (2d ed.), 614; Odgers, Libel and Slander (2d ed.), 227; Railway Co.

v. Craft, 102 S. W., 170; Bank v. Fritz, 109 N. W., 1008; Railway
Co. v. Hill, 63 Texas, 381; Mills Co. v. Iron Works, 1 Texas Civ.
App., 683.

The error of the court in submitting to the jury the issues and al-
legations set out in paragraph eight of his main charge and his refusal
to give the special charges requested was not cured by the third para-
graph of the court's charge to the jury, wherein he told them that all
allegations in the pleadings not supported by the evidence were with-
drawn from their consideration, for the reason that it is the duty and
province of the court to determine whether or not there be any evi-
dence on a particular issue, and it is the duty and province of the
jury to determine whether or not the evidence is sufficient to establish
such issue, and the court can not by such means shift his responsibility
and duty to the jury. Patton v. Rucker, 29 Texas, 407; Com. of Car-
penters v. Haywood, Doug., 375; Jewell v. Parr C. B., Doug., 909;
Austin v. Talk, 20 Texas, 165.

It is the duty of counsel to confine themselves in argument strictly
to the evidence and to the argument of counsel on the other side; and
it is the duty of the court to confine counsel to this line of argument;
and when counsel make statements outside the record which are calcu-
lated to excite the passions and prejudices of the jury, and the court
fails to do its duty—or the statements are such that the court's action
does not probably remove their effect—then the verdict (regardless of
the absence of objections from opposing counsel) should be set aside.
Willis & Bro. v. McNeill, 57 Texas, 475; Railway Co. v. Greenlee, 70
Texas, 562; Railway Co. v. Musick, 33 Texas Civ. App., 177; Railway
Co. v. Burton, 60 S. W., 316, 25 Texas Civ. App., 63; Garritty v. Ran-
kin, 55 S. W., 368; Hunstock v. Roberts, 65 S. W., 677; Railway Co.
v. Rehn, 82 S. W., 527, 36 Texas Civ. App., 553; Dillingham v.
Scales, 78 Texas, 205; Gulf, C. & S. F. Ry. Co. v. Wallen, 65 Texas,
568; Wichita Falls Valley Co. v. Hobbs, 23 S. W., 924, 5 Texas Civ.
App., 34.

*Clarence H. Miller, George Clark, O. L. Stribling* and *Fiset & Mc-
Clendon,* for appellees.

KEY, ASSOCIATE JUSTICE.—The nature of this suit is sufficiently
indicated by the charge of the trial judge, which, omitting formal
parts, reads as follows:

"Gentlemen of the Jury: In this case the plaintiffs allege that R.
L. Brown and J. Gordon Brown, under the name of Brown Brothers,
had established at Austin and in the city of Waco a business of loan
agents, which transacted business throughout the State, and had from
1888 to 1898 conducted the business of lending money on behalf of
foreign corporations, receiving for their services a percent of the an-
nual interest as it accrued upon the loans made; that the plaintiffs
had established a good reputation as business men for honesty, prompt-
ness and reliability, and as men who could command money for lend-
ing to those who might apply to them to borrow, and in the transac-
tion of the business of loan agents, had established business relations
with many people in Texas who were borrowers of money, who had

confidence in the plaintiffs and who would have continued to do business with them except for the interference of the defendant; that they were appointed agents of the American Freehold Land Mortgage Company of London, Limited, hereinafter called the defendant company, in the year 1888, and continued to transact business as such agents for that company until the year 1898, during which time a profitable business was done for said defendant company, for which the plaintiffs received annually eight thousand dollars; that in the year 1898 the defendant company determined to change the manner of doing business in Texas, so as to pay salaries instead of commissions, as it had done with the plaintiffs; that by reason of the transactions which plaintiffs had carried on as agents, lending money for the said defendant company, as well as others, they had established a valuable business, having loaned money to many persons, which loans were about to mature, and said persons would require to renew the loans or to borrow money to pay them; that plaintiffs would have been able to control that business as agents of other companies after the agency for said defendant company had been taken from them, and to prevent this and secure the plaintiffs' business for themselves, the said defendant company and R. B. King and T. Mallinson, who are alleged to be agents of the defendant company, fraudulently and maliciously combined, confederated together for the purpose of weakening and destroying plaintiffs' business influence, financial credit and standing, and to break them up and run them out of business, and that by means of the fraudulent combination and their acts done and performed, alleged specially in the petition, the defendant succeeded in preventing the plaintiffs from continuing their business with a large number of their clients who needed to borrow money and whose loans in other companies were maturing, and by the fraudulent and false representations alleged in the petition, defendant prevented said persons from making application to the plaintiffs for such loans, and thereby weakened and in a large measure destroyed the business of the plaintiffs. It is further alleged that the defendant, for the wicked, malicious and fraudulent purpose before charged, circulated and published reports and statements to the effect that the plaintiffs were insolvent and unable to accommodate their customers who might apply for loans, and by the various methods alleged, interfered and prevented persons from applying to the plaintiffs for loans, and also by such means and false and fraudulent representations prevented plaintiffs from acquiring agencies from other companies, which otherwise they would have done, so as to enable plaintiffs to furnish money to those persons who applied to them for loans.

"2. Plaintiffs have dismissed their case as to T. Mallinson and R. B. King, and they are no longer parties to this case. The defendant company denies the allegations in the plaintiffs' petition, and specially allege that on the 20th day of July, 1899, plaintiffs and defendant company made and entered into an agreement wherein they had a full and complete settlement of all matters in controversy then existing between said company and said plaintiffs, growing out of their relations as principal and agents and on account of the termination thereof, and it alleges that no acts or statements complained of

by the plaintiffs herein as committed or made by its representatives (if any were actually committed or made) were committed or made under its authority or with its knowledge or consent; nor was any such act or statement ever ratified by it; that neither it nor its representatives ever at any time caused the plaintiffs to lose any company which they had, nor caused them at any time to lose any customer which they had; that neither the defendant nor its representatives at any time prevented the plaintiffs from securing any new company, nor did it or its representatives at any time prevent the plaintiffs from securing any new customers; that neither it nor its representatives at any time prevented or caused any company or persons to desist from loaning plaintiffs any money, nor did it or its representatives ever at any time cause the plaintiffs or either of them to suffer any damage, save such as necessarily resulted to them by the withdrawal of defendant's business from them, which it had a full legal right to do, and for any results of which it is in no way responsible.

"3. All allegations of fact in the pleadings, in support of which no evidence has been introduced, are withdrawn from your consideration, and you will not consider such allegations for any purpose in arriving at your verdict.

"4. Under the contract of employment of plaintiffs by the defendant company, said company retained the right to discharge the plaintiffs at any time for or without cause, at its discretion, and hence the plaintiffs can not recover of the defendant any damages for withdrawing or terminating its agency contract with the plaintiffs, or for any losses which the plaintiffs may have sustained by reason thereof, regardless of the motives said company may have had in withdrawing the same. When the plaintiffs were discharged by said company a settlement of all matters existing between them, growing out of said contract, and damages to the plaintiffs on account of the sending out of what is known as the Francis Smith & Company letters, was made and entered into on July 20, 1899, under and by virtue of which both parties released the other from all liability for or on account of anything arising out of or connected with the former agency of the plaintiffs, and also the Francis Smith & Company letters; and hence plaintiffs can not recover of the defendant any damages for or on account of the Francis Smith & Company letters (and are limited in the amount of their recovery in this suit, if any, to damages growing out of the alleged wrongs committed by defendant, through its officers and agents, which did not arise out of and were not connected with the agency referred to, nor growing out of the Francis Smith & Company letters, namely, alleged fraudulent and malicious acts and false declarations uttered and done by the defendant for the purpose of breaking up plaintiffs' business as loan agents and running them out of such business); and all of the evidence which has been admitted, touching the kind of business done by the plaintiffs for the defendant company and the English and Scottish Company, was admitted upon the issue above stated, and can only be considered by you in determining whether or not the defendant committed the acts alleged for the purpose alleged, as above stated; and the Francis Smith & Company letters can only be considered by you in arriving at or determin-

ing the purpose, if any, of the defendant company or its agents, in doing the other acts or making the other statements, if any, which the plaintiffs charge were done for the purpose of breaking up the plaintiffs' business as loan agents and driving them out of such business; and in no event can they be considered by you in estimating the amount of damages, if any, which plaintiffs may have sustained.

"5.   Some evidence has been introduced regarding letters written and statements made by J. H. Harrison and F. W. Norris, employes of Francis Smith & Company, and in this connection you are instructed that you can not consider these letters and statements for any other purpose whatever, unless you·believe from the evidence that Francis Smith & Company authorized or caused said acts and declarations to be made or done; and unless you believe from the evidence that they were so authorized you will disregard such evidence, and not consider the same in arriving at your verdict; but if you believe from the evidence that they were so authorized, then you will consider the statements made and letters written by them, or either of them, if any, in connection with and as part of the Francis Smith & Company letters.

"6.   The plaintiffs in this case can ·not recover on this suit any damages on account of the alleged statements of E. B. Hoare, 'If Mr. Brown had retained the agency, liquidation would have been unavoidable,' sued upon in the English court, because the judgment in that court adjudicated any cause of action, if any, that arose from the use of that expression, if same was used by the said Hoare, and you are instructed not to consider any evidence as to such statements for any purpose whatever.

"7.   Any unlawful act, done wilfully and purposely to the injury of another, is, as against that person, malicious.

"8.   Now if you believe from the evidence that the defendant company, acting through one or more of its controling officers and one or more of its agents and employes, working in concert and with a common purpose, committed the acts or some of them, or made the statements or some of them, alleged in the petition, and did such acts maliciously, or made such statements falsely, and committed such acts or made such statements in furtherance of a design and intention to break up Brown Brothers in business and drive them out of business, and that Brown Brothers were financially injured in their business as loan agents thereby, then you will find for the plaintiffs; and the burden of proof rests upon the plaintiffs to establish such facts by the preponderance of the evidence, and if you do not find for the plaintiffs under this paragraph you will return a verdict for the defendant.

"9.   By the expression 'controling officers,' as used in the foregoing paragraph, is meant some chief officer or vice-principal·of the company, who must be shown to possess under and for the company, sufficient authority and discretion to act and speak for the company as if it were present in the person of its managers speaking and acting for itself and on its own responsibility.

"10.·   If you find for plaintiffs under paragraph eight of this charge, you will assess the damages at such sum as will compensate them for the actual financial loss or injury to their business as loan agents sus-

tained by them, and state such amount in your verdict as actual damages; and in arriving at such sum, if any, you will not take into consideration any damages, if any, which may have been sustained by Brown Brothers from any other source or cause than from the acts and statements of the defendant, through its officers and agents, if any, as submitted to you in paragraph eight hereof.

"11. If under the instructions hereinbefore given you you find for the plaintiffs actual damages, then you may also, in addition to actual damages, if in your judgment the facts and circumstances in evidence warrant, find for the plaintiffs such other and further amount as exemplary or punitive damages as in your judgment, under all the facts and circumstances in evidence, may seem to you right and proper as a punishment to the defendant company for such conduct.

"12. You can not in any event find any exemplary damages, unless you find for the plaintiffs actual damages, and if you do not find that the plaintiffs have suffered actual damages under the instructions herein given you, you will return your verdict for the defendant.

"13. If you find for the plaintiffs, you will so say, and assess their actual damages, under the instructions hereinbefore given you, and state in your verdict how much you find as actual damages; and if you find exemplary damages, you will state in your verdict how much, if any, you so find as exemplary damages.

"14. You are the exclusive judges of the credibility of the witnesses and the weight to be given to the testimony, and as you find, so say in your verdict."

The jury returned a verdict for the plaintiffs for $40,000 actual and $10,000 exemplary damages. Judgment was rendered in accordance with the verdict and the defendant, Land Mortgage Company, has appealed.

*Opinion.*—This is the third time that this case has come before this court. (80 S. W., 986; 81 S. W., 824; 101 S. W., 856.) On the first appeal, which was prosecuted by the plaintiffs, on certified question submitted to the Supreme Court, that court held that the plaintiffs' petition, alleging that the defendants conspired together to ruin plaintiffs in their business as real estate agents, and for that purpose circulated false statements that plaintiffs were bankrupt, etc., and that in consequence of such representations plaintiffs' business had been destroyed, stated a cause of action. The case was reversed by this court on account of certain errors committed during the trial. The second trial resulted in favor of the plaintiffs and the defendant appealed and secured a reversal of the case because of an error in the court's charge to the jury. That error was cured at the last trial.

The present appeal is presented in this court upon seventy assignments of error, and a printed brief on behalf of appellant comprising over 200 pages. Very many of the questions presented were urged, considered and decided against appellant on the former appeals. However, the case has been given extended and careful consideration, and no reason has been found for changing any of the rulings heretofore made. There are some additional questions, some of which we deem it proper to consider in this opinion,

Error is addressed to the eighth paragraph of the court's charge, the contention being that it authorized the jury to consider all of the issues presented in the plaintiffs' petition, although as to some of them there was no testimony before the jury, and as to some others, even if the facts were as alleged, the plaintiffs were not entitled to recover upon such state of facts alone; and error is also assigned upon the refusal of certain requested instructions, withdrawing from the jury certain allegations in the plaintiffs' petition, because no evidence was submitted tending to support them. Considering the entire charge together, and especially the third paragraph, we are of opinion that no error was committed in the matters referred to. (Gulf, C. & S. F. Ry. Co. v. Farmer, 102 Texas, 235.)

Complaint is made because the court refused to give the following requested instruction: "If you believe from the evidence that the English & Scottish American Mortgage & Investment Company, Limited, withdrew its business from plaintiffs on account of the bad business done for it by plaintiffs, or in its discretion for any other reason, and not because of any false and malicious statements derogatory to plaintiffs, made by the defendant company, its agents or representatives, you will not consider the loss of said company by plaintiffs in arriving at your verdict."

Considering the nature of the plaintiffs' case as asserted in their petition and as submitted to the jury by the charge of the court, we are of opinion that the refusal of the instruction referred to does not constitute reversible error. The very gist of the plaintiffs' case was damages caused by the wrongful conduct of the defendant, and damages resulting from any other cause were not sued for. Indulging the presumption that the jury was composed of men of average intelligence, it might well be supposed that in a case of this magnitude, which the record shows was on trial for more than a month, they would understand without being specifically so instructed that the plaintiffs were not entitled to recover for any loss or injury which had not been caused by the defendant. However, in the tenth paragraph of the charge, the court specifically instructed the jury, if they found for the plaintiffs, not to take into consideration any damages which may have been sustained by them from any other source or cause than from the acts and statements of the defendant. In view of this instruction, we see no reason to suppose that the jury did not fully understand the scope of their authority, and what was their duty in that regard. We do not mean to say that the refused instruction does not embody a correct proposition of law, nor that error would have been committed if it had been given, but we do not believe that its refusal constitutes reversible error in this case. (Houston & T. C. Ry. Co. v. Milam, 60 S. W., 591.)

An instruction was requested, and error is assigned upon its refusal, to the effect that if there were general rumors that the plaintiffs were careless and incompetent loan agents, which rumors were caused by plaintiffs making loans on bad titles and insufficient security and extravagance in the management of their business, and suffered damage on account of such rumors, the defendant would not be responsible for such damage. What has just been said in reference to the other

refused instruction has application to this. Both instructions involve the same general proposition of law, to the effect that the defendant was not liable to the plaintiffs for damage that was not caused by the defendant.

Three assignments of error complain because of certain statements made and language used by the plaintiffs' counsel in arguing the case to the jury. Under these assignments but one proposition is submitted, which is to the effect that when counsel make statements outside of the record which are calculated to excite the passions and prejudices of the jury, and the court fails to interfere, then the verdict should be set aside, although such statements were not objected to at the time. While that proposition is supported by Willis & Bro. v. McNeill, 57 Texas, 475, later cases by the Supreme Court asserting a different rule and holding that such misconduct, to constitute reversible error, should be objected to at the time, have been followed by this court. (Moore v. Moore, 73 Texas, 394; Moore v. Rogers, 84 Texas, 2; Hogan v. Missouri, K. & T. Ry. Co., 88 Texas, 685; Jones v. Smith, 21 Texas Civ. App., 441; Gulf, C. & S. F. Ry. Co. v. Brown, 40 S. W., 613; Gulf, C. & S. F. Ry. Co. v. Hockaday, 14 Texas Civ. App., 613; Tyler Chair & Furn. Works v. St. Louis S. W. Ry. Co., 55 S. W., 350.) In this case some of the language used by Mr. Miller in the opening address for the plaintiffs and objected to by the defendant was legitimate and proper—some of it may have extended beyond proper bounds. But, instead of objecting to it at the time, the defendant's counsel who followed Mr. Miller, replied to him and discussed before the jury the matter now complained of. He was followed by Mr. Stribling for the plaintiffs, who also went outside of the record and discussed the matter which had previously been discussed by Mr. Miller for the plaintiffs and Mr. Sleeper for the defendant. Then Mr. Stribling was followed by Mr. Yantis on behalf of the defendant, and the latter discussed the same question at considerable length. In closing the case for the plaintiffs Judge Clark, as had all the other attorneys, went out of the record in the same respect, and then for the first time the defendant objected to that character of argument. Thereupon Judge Clark stated that he withdrew the remark objected to and requested the jury not to consider it, but stated that the defendant's counsel had alluded to it and brought it into the case first. The court stated to the jury that if there was any question about Judge Clark's remarks being withdrawn, that he would instruct them not to be influenced in any way whatever by the remarks referred to. Some further statements were then made by the other attorneys in the case as to who first mentioned the subject of trusts, and Judge Clark then used certain language which may have been inelegant and unparliamentary, but was not calculated to improperly influence the jury against the defendant. Such being the state of the record, we hold that reversible error is not shown in that regard, although a new trial was asked on account of improper argument.

There are several assignments of error which assail the verdict of the jury, the contention being that there was no evidence warranting any verdict against the defendant, and especially no evidence to justify as large a verdict as the jury returned. Appellant has cited au-

thorities in other jurisdictions indicating rules, which, if followed in this State, would require a reversal of the judgment. But, accepting the law of this case as established by the Supreme Court on the first appeal, and reasoning by analogies furnished in other classes of cases, we have reached the conclusion that the verdict finds support in the testimony, and should not be set aside by this court. The plaintiffs submitted much testimony tending to show a great amount of diminution in the volume of business transacted and profits made by them after the commission of the wrongful acts by the defendant; and, while it was not shown with absolute certainty or mathematical accuracy that the losses referred to were caused by the wrongful conduct of the defendant, we can not say that the jury were not warranted in concluding that, to a large extent, they probably were. The law is, to some extent, a growing science, and in the course of its development old rules are sometimes relaxed and even new ones established. It is now the settled rule in this State that in actions for damages on account of the death of a husband, father or son, the plaintiff, if recovery be had, is entitled to such sum of money as will be equivalent to the pecuniary aid which such plaintiff would have received from the deceased relative if the defendant had not caused his death. In such a case the jury may take into consideration the life expectancy of the deceased, his existing and prospective earning capacity, and all other pertinent circumstances, and therefrom estimate the amount of damages sustained by the plaintiff, although if the death of the deceased had not been caused by the defendant, it might have resulted on the following day from some other cause. Thus it will be seen that in a case of that kind, as well as the case at bar, the damages recoverable are, in a sense, uncertain and speculative; still, if it is permissible to recover them in the one case, we see no reason why they should not be recoverable in the other.

The verdict involves findings to the effect that the defendant, acting by its controlling officers and agents, wrongfully and maliciously committed some of the acts charged in the plaintiffs' petition and submitted to the jury, and that as a proximate result the plaintiffs' business was injured to the extent of $40,000; and, in view of the testimony, we adopt and approve such findings of fact.

All the questions presented in appellant's brief have been considered, and our conclusion is that no reversible error is made to appear, and that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.