## CITY OF WACO v. ROOK et al.

### No. 1279.

Court of Civil Appeals of Texas. Waco.

Nov. 17, 1932.

Rehearing Denied Dec. 29, 1932.

John McGlasson, Allan McDonnell, and McClellan, Lincoln & Williams, all of Waco, for appellant.

John McNamara, H. S. Beard, and W. L. Eason, all of Waco, for appellees.

ALEXANDER, J.

This action was brought by Urban Rook and others against the city of Waco to recover certain damages alleged to have accrued to them as the result of the building of Lake Waco. In 1929, the city of Waco erected what is known as the Lake Waco dam across the Bosque river near Waco in McLennan county for the purpose of providing a water supply for the city of Waco. It was alleged that the dam is about 60 feet in height, one mile in length, and backs the water up the river for a distance of more than five miles and thus impounded more than thirteen billion gallons of water. It is further alleged that plaintiffs' farm is situated on the north side of the Bosque river in the valley thereof about 500 yards below said dam, and that much of plaintiffs' land is more than 30 feet below the ordinary water level in Lake Waco, that said dam is an earthen dam, and part of it was built on a gravel base, which base allows the water to continuously seep through and under the dam from the lake, and that the plaintiffs, some of whom reside on the farm, have a well-founded apprehension that said dam will break and flood plaintiffs' land and damage the same, and that an ordinarily prudent person would have a like apprehension. Plaintiffs further allege that the city has constructed two broom gates and sixteen large floodgates about 15 feet high and 25 feet long in said dam for the purpose of providing a spillway for said lake, and has changed the natural channel of the river below said dam by constructing an artificial channel insufficient in size to carry the overflow water from said lake, which new channel enters the old channel near plaintiffs' land, and, instead of running parallel to plaintiffs' land, as did the old channel, this artificial channel strikes plaintiffs' land almost perpendicularly, and that, by reason of the diversion of the water into the new channel, a whirlpool has been created at the intersection of said channel with plaintiffs' land, and the soil on several acres thereof has been completely washed away, and the remainder of said land is in constant danger of being overflowed and washed away. The plaintiffs further allege that, by reason of the manner of the construction of said channel, 4 acres of plaintiffs' land has been washed away, to plaintiffs' damage in the sum of $800; that 10 more acres will be washed away in the future to plaintiffs' damage in the sum of $2,000; that the value of plaintiffs' entire tract of land (118 acres) has been depreciated $17,100; and that, by reason of the negligent manner in which the floodgates were operated in 1930, growing crops of the value of $200 and a fence of the value of $75 have been washed away, making a total damage in the sum of $23,175.

The city of Waco answered by general demurrer, certain special exceptions, general denial, and affirmatively alleged that it was a municipal corporation, charged with the duty of providing an adequate water supply for its citizens, and that under lawful authority granted it by the state of Texas it has impounded the waters of the Bosque river, a navigable stream, by the construction of a dam for such purpose, that said dam has been carefully and properly constructed on property acquired and owned by the city for such purpose, and that the construction

of the dam and its operations have in no manner injured the plaintiffs.

The case was submitted to the jury on special issues; said issues and the findings of the jury thereon being, in substance, as follows: (a) That the dam and its appurtenances were so constructed as to occasion physical injury to plaintiffs' land; that 2 acres of said land of the value of $90 per acre were actually physically injured: (b) that the reasonable market value of plaintiffs' land immediately before the construction of the dam and its appurtenances was $125 per acre, and that immediately after its construction it was of the reasonable market value of $90 per acre; (c) that the market value of plaintiffs' land had been depreciated by the construction of said dam and its appurtenances in the sum of $4,130; (d) that plaintiffs' cotton of the value of $200 and a fence of the value of $75 were washed away during the year 1930 as the proximate result of the negligence of the defendant's caretaker in failing to raise the gates of said lake before the water rose above the gates.

Upon such verdict, the court entered judgment for the plaintiffs for the sum of $4,515. The defendant appealed.

The appellant contends that the court has allowed a recovery for the depreciation in the market value of appellees' land occasioned by a mere fanciful apprehension or fear that the dam might break at some time in the future and injure appellees' land, without proof or a finding of a reasonable probability that the dam will in fact break in the future, and without proof or a finding that the dam was negligently constructed, and it presents the proposition that the appellees are not entitled to recover anything for the depreciation in the market value of their land on account of the construction of the dam unless the dam was negligently constructed or unless it is reasonably probable that the dam and its constructions would probably injure appellees' land.

■■ We agree with appellant that appellees are not entitled to recover anything for the depreciation in the market value of their land occasioned by the erection of the dam and its appurtenances unless it is reasonably probable that as a result thereof injury will actually result to said land. In other words, even though the market value of appellees' land has actually depreciated as the result of the erection of the dam and its appurtenances, appellees are not entitled to recover if such depreciation has been brought about by a mere fanciful unfounded fear that the dam will break at some future date. Every one has a right to use his property as he sees fit, so long as he does not injure the rights of others. A dam which impounds water is not a nuisance per se. The city of Waco had a lawful right to erect the dam on property of its own for the purpose of impounding water for its citizens, and unless, on account of the manner in which the dam and its appurtenances were erected, there is a real danger of injury to appellees' land, appellees have no right to recover. It is not infrequent that one in the use of his own property in a perfectly lawful manner may bring about a depreciation in the market value of his neighbor's property, as by the erection of unsightly buildings, business houses, excavation, or manufacturing plants, or the location of a railroad in close proximity thereto; yet, if there is no real danger of injury to the property or of an interference with the use thereof, such neighbor cannot recover damages for such depreciation in the market value of his property. Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237; Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125; Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387; Sanders v. Miller, 52 Tex. Civ. App. 372, 113 S. W. 996.

■ We do not agree, however, that the court has allowed a recovery herein for depreciation in the market value of appellees' land produced solely by an unfounded fanciful fear that the dam in question will break. It is true that there was no finding by the jury that the dam would likely break, and there was but little, if any, evidence to support such an issue, but there was evidence that, on account of the manner in which the floodgates and the new channel leading therefrom were constructed, appellees' land is endangered. It appears that before the dam was constructed the old channel of the Bosque river ran parallel to appellees' farm, and said land was protected by a high embankment. It was seldom that the land overflowed, and, when this did occur, the water did not flow across the land, but merely backed up onto the land and caused very little injury. When the dam was built, a new channel was constructed. The upper end thereof is about one-half mile south of the old channel, and the lower end thereof enters the old channel at a sharp angle on the line of appellees' farm. The floodgates are large enough that, when operated at full capacity, they release far more water than the channel will carry. This water when released is thrown against the south line of said farm at such an angle as to create a whirlpool, which has already washed away a part of appellees' land, and with such force and volume as to overflow appellees' land. In this way the water is caused to flow rapidly across appellees' land and to wash the soil away. The appellees not only charged that there was danger that the dam would break and injure the land, but they alleged that the dam and its appurtenances, which included the new channel and the floodgates, were so constructed as to create a menace and hazard to the land and to cause injury thereto. The evidence above referred to was sufficient to

authorize a jury to find that the dam and its appurtenances were so constructed as to create a hazard and to occasion physical injury to appellees' land and thus depreciate the value thereof. With such evidence before it, the court submitted to the jury, and the jury answered, certain material issues, as follows:

"Defendant's special requested charge No. 6—1: Do you find from a preponderance of the evidence that the dam and its appurtenances are so constructed as to occasion any physical injury and loss to the plaintiffs' land?" to which the jury answered, "Yes."

"Defendant's special requested charge No. 6—2: How much, if any, do you find from a preponderance of the evidence that the plaintiffs' land was actually physically injured?" to which the jury answered, "2 acres ($90.00 per acre)."

"Special issue No. 1: Do you find from a preponderance of the evidence that the market value of plaintiffs' land was depreciated by the construction of the dam and its appurtenances?" to which the jury answered, "Yes."

"Special issue No. 2: How much, if any, do you find from a preponderance of the evidence that plaintiffs' land depreciated in market value by reason of the construction of said dam and its appurtenances?" to which the jury answered, "$4,130.00."

At the request of the defendant, the court submitted the following special issues:

"What was the reasonable market value of the plaintiffs' lands immediately prior to the construction of the dam and its appurtenances, which construction, according to the evidence, began in December of 1928?" to which the jury answered, "$125.00 per acre."

"What was the market value, if any, of plaintiffs' land immediately upon the beginning of the construction of said dam and its appurtenances and after the erection and construction thereof became a certainty?" to which the jury answered, "$125.00 per acre."

"What was the reasonable market value of the plaintiffs' land immediately upon the completion of the dam and its appurtenances in May of 1930?" to which the jury answered, "$90.00 per acre."

■ If said dam and its appurtenances were so constructed as to occasion physical injury and loss to appellees' land, as found by the jury, the appellees were entitled to recover the depreciation in the market value of said land as the result thereof even though there was no danger of the dam breaking. The appellant, upon request, would have had the right to have had the jury instructed not to consider any depreciation brought about by an unfounded fear that the dam might break, but it neither objected to the court's charge for the failure to so instruct

the jury, nor requested the submission of such an instruction. The jury was instructed specifically, by appellant's requested special charge No. 7, not to take into consideration any depreciation in the market value of the land which was not solely occasioned by the construction of the dam and its appurtenances.

■ The appellant objected to the submission of special issues 1 and 2 above quoted, as follows: "Because the issues as framed permit the jury to find that the market value of the plaintiffs' land was depreciated by the construction of the dam and its appurtenances without any finding by the jury that the said dam and its appurtenances as constructed constituted any hazard, menace or threat to the plaintiffs' land and thereby eliminates from the consideration of the jury the material issues of the case as joined between plaintiffs and defendant by their respective pleadings."

We do not think that the charge as a whole, when considered in connection with the defendant's special issue No. 6—1, was subject to the above objection. In answer to the defendant's special requested issue No. 6—1, above quoted, the jury found that the dam and its appurtenances were so constructed as to occasion physical injury and loss to the plaintiffs' land.

The appellant further objected to said special issues 1 and 2, as follows: "Because the said issues as framed do not permit the jury to find specifically what amount of damages, if any, have been suffered by reason of actual physical injury to the plaintiffs' land separate and apart from the damages for the alleged menace and hazard of the dam, but permit the jury in response thereto to bring in damages for both actual physical injury to the lands of the plaintiffs and damages for depreciation of the value of the lands as a whole, thereby making it impossible for the court and for the defendant to test the sufficiency of the verdict in the light of the evidence offered."

We do not think that the charge as a whole is subject to the above objection. The jury not only found that the dam and its appurtenances had been so constructed as to occasion injury to the land and that the market value thereof had thereby been depreciated, but found that the value of the land had been depreciated $4,130 by reason of the construction of such improvements. There were 118 acres of land, which, according to the finding of the jury, had a market value of $125 per acre before the construction of the improvements and $90 per acre after the construction of the improvements. The depreciation amounted to $35 per acre on 118 acres or $4,130 as found by the jury. The jury found that 2 acres of land of the value of $90 per acre had been

physically injured or washed away. It is clear, therefore, that the jury carefully separated the depreciation in the value of the land occasioned by the construction of the dam and its appurtenances—the anticipated damages resulting from danger of actual injury to the land—from the damages awarded by them for subsequent actual physical injury to the land.

■ The appellant further complains because the court did not give its special requested issue No. 2, as follows: "Do you find from a preponderance of the evidence that it is reasonably probable that the dam in question will break?" The court did not err in refusing to give this charge. The appellees were not dependent for a recovery on their ability to show that there was danger that the dam would break. They alleged that the dam and its appurtenances, which included the floodgates and the new channel, threatened and endangered the land and thus depreciated the value thereof. The above issue did not include the danger created by the construction of the appurtenances. Such issue submitted a mere evidentiary fact, for, even though the jury had found that there was no reasonable probability that the dam in question would break, yet, if the dam and its appurtenances, as found by the jury, were so constructed as to endanger plaintiffs' land, the plaintiffs had a right to recover for the depreciation in market value brought about thereby.

■ The appellant complains of the refusal of the court to give its special requested issue No. 4, as follows: "Do you find from a preponderance of the evidence that defendant was negligent in the manner and method of constructing the dam in question?" The court did not err in refusing to give this charge. It did not include the appurtenances to the dam, and consequently submitted a mere evidentiary issue, for, even though the jury had found that the defendant was not negligent in the manner and method of the construction of the dam in question, still, if the appurtenances to the dam, including the channel, were so constructed as to actually endanger plaintiffs' land, the plaintiffs were entitled to recover. Moreover, whether or not appellant was negligent in the construction of the improvements in question is immaterial. Our Constitution, art. 1, § 17, prohibits the taking or damaging of one's property without just compensation, and, if appellant did damage appellees' property, as found by the jury, it was liable for the consequences thereof even though it exercised precaution and was not guilty of negligence in the construction of the improvements complained of. 46 C. J. 663; 20 R. C. L. 381, § 3; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.(2d) 57, par. 6; M. K. & T. Ry. Co. of Texas v. Perry, 46 Tex. Civ. App.

374, 102 S. W. 1169–1171; Western Texas Compress Co. v. Williams (Tex. Civ. App.) 124 S. W. 493; Hamm v. Briant, 57 Tex. Civ. App. 614, 124 S. W. 112; Olivas v. El Paso Electric Co. (Tex. Civ. App.) 38 S.W. (2d) 165, par. 4; T. & P. Ry. Co. v. Mixon (Tex. Civ. App.) 21 S.W.(2d) 1098, par. 1, and cases there cited.

The appellant complains of the action of the court in refusing to give its special requested charge No. 9, as follows: "You are instructed that in answering special issues Nos. 1 and 2, you should not take into consideration any depreciation which might arise by the mere construction of the dam and its appurtenances, but you should only consider such depreciation, if any, as might have been occasioned by the negligent construction, if it was negligently constructed, of said dam and its appurtenances, and in this connection you are instructed that the dam in question having been erected pursuant to lawful authority granted by the State of Texas that the plaintiffs are not entitled to recover any damages arising from its mere construction, but are entitled to recover damages in the event that said dam has been negligently constructed, or so constructed as to cause actual injury to the plaintiffs' lands, and in answering said issues, you will confine yourself solely thereto."

■ Aside from the fact that this charge is objectionable because it is a general charge in a case that was submitted to the jury on special issues, we do not think that it correctly states the law. The effect of this charge was to tell the jury that they should take into consideration only such damages as were occasioned by the negligence of the appellant. This is not the law. See authorities heretofore cited.

■ The appellant complains of the action of the court in allowing a recovery for the value of 2 acres of said land at $90 per acre which was washed away after the completion of the dam and its appurtenances. The appellees alleged that a part of said land had been washed away as the direct result of the construction of said improvements. It was not alleged, however, that this was due to any act of negligence on the part of the appellant. This injury is alleged to have been the result of the original wrongful act and not the result of any subsequent act. There was evidence that 2 acres of the land had been washed away as the result of the whirlpool caused by the new channel. The 2 acres of land at $90 per acre, as found by the jury, would have amounted to $180, but, in figuring the judgment, for some reason only $110 was included for this item. The court allowed a recovery for this item in addition to the sum of $4,130 allowed for the depreciation in the value of the entire tract. The appellant con-

tends that this constituted a double recovery. We are of the opinion that this contention is correct. The appellees' action was for the permanent injuries caused by the construction of the dam and its appurtenances, and the rule is that, where the injury to the land is permanent, as was contended for in this case, the measure of damages is the depreciation in the value of the land brought about by the construction of such improvements. The amount of such depreciation is ordinarily ascertained by taking the difference between the value of the land immediately before the construction of the improvements and its value immediately after the completion thereof. In such case the injured party can have but one cause of action and one recovery, and he must recover therein for all damages accrued or to accrue in the future as the result of such act. The damages allowed—the depreciation in the value of the land—compensates him for all present as well as all future anticipated injury. It is elementary that he could not recover for the anticipated injury, and then when the injury occurs, as was anticipated, recover again for such injury. T. & P. Ry. Co. v. Ford, 54 Tex. Civ. App. 312, 117 S. W. 201; M., K. & T. Ry. Co. of Texas v. Anderson (Tex. Civ. App.) 194 S. W. 662, par. 5; Rosenthal v. T., B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268; St. Louis S. W. Ry. Co. v. Long, 52 Tex. Civ. App. 42, 113 S. W. 316; Denison B. & N. O. Ry. Co. v. Barry, 98 Tex. 248, 83 S. W. 5; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.(2d) 57; Hutchinson v. I. & G. N. Ry. Co. (Tex. Civ. App.) 111 S. W. 1101–1105; Lyles v. T. & N. O. Ry. Co., 73 Tex. 95, 11 S. W. 782. The injury to the 2 acres of land was a part of the anticipated injury fully compensated for in the allowance of the $4,130 for depreciation in the value of the land. The court should not have allowed the recovery of $110 for the 2 acres of land subsequently washed away.

The appellant complains of the action of the court in allowing a recovery for the value of a certain cotton crop and a fence destroyed by an overflow of said land during the fall of 1930, through the alleged negligence of appellant's agents. The appellees alleged that in the fall of 1930 appellant's agent in charge of the operation of the floodgates negligently allowed said gates to remain closed during a heavy rain until the water in the lake had risen to 2 feet above the top of said gates, and then negligently opened eleven of said gates to full capacity, and as a consequence the channel was caused to overflow and appellees' cotton crop and fence were washed away. The jury found that said agent was negligent in failing to raise the gates before the water rose above them, and that as the proximate result thereof appellees' cotton crop of the value of $200 and fence of the value of $75 were washed away. The court allowed a recovery for these items in addition to the recovery of $4,130 for permanent depreciation in the value of appellees' land. The appellant contends (a) that this constituted a double recovery; and (b) that the city was under no obligation to furnish flood control to appellees, and that liability herein is based on the failure of the city to furnish such flood control. The rule which confines the injured party to one action and requires him to recover therein for both present and anticipated injuries applies only to such injuries as result from the original wrongful act, and does not apply to injuries brought about by subsequent tortious or negligent acts of the wrongdoer. When the dam and its appurtenances were erected, although erected in a prudent and cautious manner, a hazard was created which, without the anticipation of any future negligence on the part of the city, actually depreciated the market value of appellees' land to the extent as found by the jury of $4,130. In estimating this damage, it was contemplated that the city and its agents would conduct themselves in an ordinarily prudent manner, and no allowance was made for damages that might be caused by future negligence. If, after the hazard had been created, the city's employees were guilty of negligence which caused additional damages other than that which would have resulted from such original act, then the appellees were entitled to recover for such additional damages caused by such negligence. While the city, strictly speaking, was not obligated to furnish flood control to appellees, yet, having interfered with the natural flow of the water and having undertaken to impound and discharge the water in an unnatural way, it was under obligation to exercise ordinary care not to injure the rights of others, and, having failed to do so, it is liable for the consequences. The appellees had the right to join their action for such additional damages in one suit with their action for the depreciation in the market value in order to prevent a multiplicity of suits. The court did not err in allowing a recovery for the value of the cotton and fence so destroyed.

The appellant contends that, since the jury found in answer to its special issue No. 6—2, that only 2 acres of appellees' land of the value of $90 per acre had been physically injured, the appellees should be limited in their recovery to the value of said 2 acres of land, or $180, plus $275 for the value of the cotton crop and fence washed away, making a total of $455. Appellant apparently interprets the finding that 2 acres of said land of the value of $90 per acre had been physically injured, as a finding that this was the total damage actually sustained by appellees both present and prospective as

the result of the hazard and menace created by the construction of said improvements. We do not so interpret the verdict of the jury. The appellees were suing to recover, and the court submitted to the jury, two different items of damages, first, the depreciation in the value of the land caused by the construction of the improvements, and, second, the value of a number of acres of land actually washed away after the completion of the dam and before the trial. The first included all damages, both present and prospective, that would result to the land as the result of the menace and hazard actually created by the original act, and the jury found this item to be $4,130; while the latter included only the value of the land that had been actually physically injured by being washed away after the improvements were completed and prior to the trial, and the jury found this item to be $180. Such interpretation must necessarily be given to said special issue 6—2 when it is considered in connection with the pleadings and evidence and the remainder of the court's charge. The jury evidently so interpreted said issue, for, after finding that the land had a value of $125 per acre prior to the construction of the improvements and a value of $90 per acre after the completion of such improvements, they found that the 2 acres which had been subsequently physically injured was only of the value of $90 per acre, thus indicating that they were assessing the value of said 2 acres of land at the value which it had after the depreciation brought about by the construction of the dam and its appurtenances. We overrule this contention.

 The appellant complains of certain alleged improper argument by attorneys for the appellees before the jury. This argument consists of statements by said attorneys to the effect that they were acquainted with certain witnesses who had testified on behalf of appellees and that said witnesses were high-class citizens, worthy of belief, and that such witnesses would not falsify, etc., and of a statement made by one of said attorneys that he did not believe that the jury was going to "swallow" the testimony of a certain witness who had been paid a fee of $10 by the city for his time consumed while examining the land in question and testifying in the case as an expert as to the value of the land in question. Appellant also complains of a statement by one of said attorneys that, so long as there was a reasonable fear that the dam in question would break, this would cause a depreciation in the market value of the land even though the dam actually stood until "Gabriel blew his horn." The bills of exception show that no objection was made nor exception taken to this argument at the time it was made and no request was made to have the jury instructed not to consider same. The objection was raised for the first time in the motion for new trial. While some of this argument was probably improper, it was not so prejudicial or inflammatory that an instruction from the court would not have corrected the error, if any. The general rule is that, where the argument is so prejudicial or inflammatory that an instruction from the court would not cure the error, it is not incumbent on the complaining party to object thereto and request the court to instruct the jury not to consider the improper argument, but, where the argument is such that an instruction from the court would cure the error, the complaining party must object to the argument and request the court to instruct the jury not to consider it; otherwise the error is waived. City of Pampa v. Todd (Tex. Civ. App.) 39 S.W.(2d) 636; G., C. & S. F. Ry. Co. v. Greenlee, 70 Tex. 553, 8 S. W. 129; In Re Ramon's Estate (Tex. Civ. App.) 20 S.W.(2d) 351, par. 4; American Freehold Land Mortgage Co. v. Brown, 54 Tex. Civ. App. 448, 118 S. W. 1106–1109; Ware v. Jones (Tex. Com. App.) 242 S. W. 1022. We do not think that the error herein complained of requires a reversal of the case.

We have considered all other assignments, and consider them without merit.

The judgment of the court will be reformed so as to reduce the principal of the judgment $110. As reformed, the judgment of the trial court is affirmed.