GREEN et al. v. GREEN.   (No. 6627.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 30, 1921. Rehearing Denied Jan. 4, 1922.)

1. **Trial** ⬤⟿120(2), 133(1)—Argument on attorney's agreement, not in evidence, held erroneous, and court should have reprimanded counsel.

In a suit to determine which of two women, claiming to be the wife of a deceased employé, was entitled to the compensation for his death, where a vital question was whether the man plaintiff claimed to have married was the same man whom defendant subsequently married, an argument by plaintiff's attorney that defendant's attorneys by trickery had sought to raise that question, after it was agreed that the women had married the same man, was erroneous, where there was no evidence of such agreement by the attorneys, and the trial judge should have reprimanded the attorney making the argument, on objection thereto, even though no request was made for an instruction that the jury disregard it.

2. **Appeal and error** ⬤⟿1031(5)—Argument not supported by evidence presumed prejudicial.

An argument by plaintiff's attorney, unsupported by the evidence, that defendant's attorneys had agreed to plaintiff's contention on one of the vital issues of the case, will be presumed to have influenced the verdict.

3. **Master and servant** ⬤⟿388—Claimant held not entitled to compensation as surviving wife.

Even though the first wife of an employé had deserted him without cause, so as not to be entitled to compensation for his death under Employers' Liability Act, as amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15), a woman who subsequently married the employé was not his legal wife, and could not claim the compensation as such.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by Catherine Green against Louisa Green and others to set aside an award made by the Industrial Accident Board in favor of defendant Louisa Green. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

T. H. Ridgeway, of San Antonio, and H. T. Cooper, of Fort Worth, for appellants.

Allan V. McDonnell and G. B. Rogers, both of Waco, for appellee.

FLY, C. J. This is a suit instituted by appellee against the appellants, Louisa Green, T. H. Ridgeway, and Miller's Indemnity Underwriters, to set aside an award made by the Industrial Accident Board in favor of Louisa Green for the death of Jerry Green, claimed by her to be her husband, who was accidentally killed while in the employment of the Texas Refining Company, a subscriber

---

under the Employers' Liability Act of the state of Texas (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz. Ridgeway, an attorney for Louisa Green, had been awarded a portion of the award to his client by the Industrial Accident Board. The cause was submitted to a jury on two issues; one being the identity of the Jerry Green who married Catherine in Waco with the Jerry Green who married Louisa in San Antonio; and the other, that Catherine had not abandoned Jerry without just cause. The jury answered that it was one and the same man that had married both women, and that the abandonment was not without just cause, and judgment was rendered in favor of Catherine for $2,300, who had taken the first turn with Jerry in matters of matrimony, at least so far as this case is concerned.

The evidence of Catherine tended to show that she married a negro man named Jerry Green, in East Waco, in 1907, and that he had previously been married to Betty, who had died. Catherine lived with Jerry for two years, when he became ill and left to go to his sister in Navasota. He wrote only two letters to her. Catherine had two marital experiences prior to marrying Jerry. Catherine did not hear from Jerry after 1909, until she heard of his death in 1918. She said:

"I didn't know if he got well, but I just thought this; I said, 'Well, if he died, she was a sorry sister-in-law if she wouldn't let me know;' but by him not coming back home I knew he wasn't dead."

She said he was 50 years old in 1907, which would make him 61 years old when he died.

It was shown by the testimony of Louisa that she took her first step in matrimony by marrying Jerry Green in December, 1916, in the city of San Antonio. At that time he was about 50 years of age, and was about 52 when he died. When she married him, he was hale and hearty.

The evidence tended to show that the Waco Jerry Green "was a low, chunky man, looked like a man of about 50" in 1907; that "he was a right black man, he was so black until his finger nails looked blue, but his hair was just as straight as could be." No description of the San Antonio Jerry was given. Although it was testified by Catherine that her Jerry had a sister, Ella Breedlove, and a brother-in-law named Dave Watson, neither of them was placed on the stand, and the evidence left in doubt as to whom the Industrial Accident Board Jerry belonged.

The vital question was whether the two Jerrys were really one and the same, and whether Catherine had lost any right, title, or interest by about 10 years of indifference to his welfare and happiness. Her interest became strong and burning when she learned that he was dead and had left money to which his wife was entitled.

The facts in this case, as given by Catherine alone, are that she was married to Jerry Green in 1907. No license was produced; no person present at the ceremony was called as a witness. The marriage rests in the first instance on her uncorroborated testimony. The evidence of his relatives, which Catherine said he had, was not produced as to any point in the case. Catherine testified:

"We were married in the courthouse in Waco. in McLennan county. Elder McJunkins married us; he was a white Baptist preacher. Jerry got the license in the courthouse. I and him went up to the courthouse, and he got the license, and we stood and married."

She was very uncertain and contradictory in her testimony. She testified on this trial that she got two letters from Jerry after he left to go to his sister at Navasota; but, being recalled, she testified:

"I had never heard from Jerry from the time he went to see his sister."

In Austin she swore she did not write to the sister, but on this trial swore she had written to her, asking about Jerry. The mind of Thomas was much illuminated between the time he was on the stand in Austin, and on the trial of this case in San Antonio. He testified on this trial that he saw the Jerry Green in San Antonio, who was known to him. In his testimony in Austin he testified to nothing of the kind. He was very unsatisfactory and contradictory in his testimony. No one corroborated Catherine as to her marriage to Jerry. The issue of marriage was not submitted to the jury, but was assumed by the court. It was one of the vital issues in the case. The Waco Jerry and the San Antonio Jerry might be the same man; but, unless there was a legal marriage in Waco, there could be no recovery by Catherine.

[1] In this state of the record an attorney for Catherine, in the closing argument to the jury, said:

"You gentlemen perhaps noticed on yesterday a very unusual proceeding in this case. After the evidence was closed, you gentlemen were sent out of the courtroom, and were then recalled, and more evidence was introduced on the issue as to the identity of the Waco Jerry Green as being the same as the San Antonio Jerry Green. The reason of that was that the attorneys on the other side of this case, by trickery, undertook to raise an issue as to whether or not the Waco Jerry Green was the same as the San Antonio Jerry Green. At the beginning of the trial of this cause, all of the attorneys entered into a solemn agreement in this cause in which it was agreed that the Waco Jerry Green and the San Antonio Jerry Green were one and the same person."

No such agreement was placed in evidence. When the argument was objected to, the court merely remarked that the question of

identity was an issue in the case, but did not rebuke the attorney, nor instruct the jury not to consider the argument. The only qualification to the bill of exceptions is that counsel for appellants did not request the court to instruct the jury to not consider the remark. The argument was very improper, being about one of the vital points in the case, and, not meeting with the condemnation of the court, doubtless influenced the verdict of the jury. The court should have reprimanded the attorney for using reprehensible and inexcusable language, whether he instructed the jury not to consider it or not. In most of the cases, if not all, cited by appellee, the court had verbally instructed the jury to disregard the argument. In the case of Bonner & Eddy v. Glenn, 79 Tex. 531, 15 S. W. 572, cited by appellee, the language was used in the opening argument and the court said:

"There may be cases in which language used, especially in a closing argument, is so well calculated to arouse the prejudices of a jury as to make it proper to reverse a judgment, although the court may have done all in its power to destroy their effect."

[2] In this case the court expressed no disapproval whatever of the argument, although it was an attack upon the honor and integrity of an attorney, in regard to the vital issue in the case, and without one particle of evidence upon which the argument could be based. It will be presumed that the argument influenced the verdict of the jury.

[3] The amendment of 1917·to the Employers' Liability Act, as embodied in Vernon's Ann. Civ. St. Supp. 1918, art. 5246–15 provides:

"The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto abandoned his wife, * * * the wife who has not at the time of the injury * * * abandoned her husband and the minor children," etc.

In this case there was no technical abandonment by Catherine of her husband; but if, on a further development of the facts of the case it should appear that she had by her cruelty or indifference to his sickness driven him off, it might preclude her from a recovery of the award, even though she was legally married to him. However, if there was a legal marriage in Waco, there could have been no second legal marriage, and Louisa could not recover. If Catherine abandoned her husband for three years, and could not recover, that fact would not constitute the woman of the last marriage a beneficiary, because she would not be a wife.

The judgment is reversed, and the cause remanded.

---

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes