**FLOYD v. FIDELITY UNION CASUALTY CO. et al. (No. 744.)**

Court of Civil Appeals of Texas. Waco. Jan. 17, 1929.

Rehearing Denied Feb. 14, 1929.

White & Yarborough, of Dallas, for appellant.

Martin & Oneal, of Wichita Falls, for appellee.

GALLAGHER, C. J. This suit was instituted by appellant, Willie Teel Floyd, against appellees, Fidelity Union Casualty Company and Frankie Floyd, to set aside a final order of the Industrial Accident Board on the conflicting claims of appellant and appellee Frankie Floyd against said casualty company for compensation for the death of Andrew Floyd. Andrew Floyd died from injuries sustained in the course of his employment as a laborer for the Rosebud Oil & Cotton Company. Said casualty company was the insurance carrier. Andrew Floyd left no minor children. Appellant and appellee Frankie Floyd each claimed to be the lawful wife of Andrew Floyd, and entitled to the compensation payable on account of his death. There was a trial by jury on special issues, a judgment in favor of Frankie Floyd against the casualty company for the lump sum of $3,-148.13, and a further judgment that appellant, Willie Teel Floyd, take nothing herein. She alone has appealed. All the errors assigned relate to issues between said two claimants. No further reference to the insurance carrier need be made. Frankie Floyd will be regarded as sole appellee and referred to as such.

### Opinion.

■ Appellant submits as fundamental error, assigned for the first time in her brief in this court, a proposition that the verdict of the jury is insufficient to support the judgment in favor of appellee, because it does not contain a finding that appellee was ever married to Andrew Floyd. Appellee introduced affirmative proof of her marriage to Andrew, and there was no attempt to controvert the same. Appellant introduced affirmative proof of her marriage to Andrew many years thereafter, and there was no attempt to controvert the same. No issue of the marriage to Andrew of either appellee or appellant was submitted, but such marriages, respectively, were treated as accepted facts. The court did submit: (a) Whether Andrew was divorced from appellee prior to his marriage to appellant; (b) whether appellee abandoned him without good cause for a period of three years prior to his death; (c) whether a manifest hardship and injustice would result if she were denied a lump sum settlement. The first two issues were answered "No," and the third "Yes." The only other issue submitted was whether appellant would suffer manifest hardship and injustice, if denied a lump sum settlement, which was answered "No." Neither appellant nor appellee requested the submission of any issues. Article 2185 of the Revised Statutes provides that only controverted questions of fact shall be submitted to the jury. Said statute is applicable in this case. Hebert v. New Amsterdam Casualty Co. (Tex. Com. App.) 3 S.W.(2d) 425, 426, par. 3; Adams v. Houston Nat. Bank (Tex. Com. App.) 1 S.W.(2d) 878, 879, par. 1; Pullman Co. v. G., C. & S. F. Ry. Co. (Tex. Com. App.) 231 S. W. 741, 743, 744; Western Union Tel. Co. v. Brown (Tex. Civ. App.) 285 S. W. 866, 867, 868. Since the marriage of appellee and Andrew Floyd was established by direct and affirmative evidence, which was in no way controverted nor discredited, a finding thereon by the jury was not necessary. It is therefore not necessary to determine whether an issue of fundamental error is submitted or not.

Appellant requested the court to charge the jury peremptorily to find in her favor, on the ground that the evidence was insufficient to justify the submission of the issue of whether Andrew had procured a divorce from appellee prior to his marriage to appellant. The facts that Andrew and appellee were married, lived together as husband and wife for many years, and reared a family, were undisputed. Appellee testified that they moved to Wichita Falls, Tex., in 1907, and lived together continuously until 1917; that she knew why Andrew left home; that in October of that year he got into trouble with a white woman named Pitts; that the woman was arrested and put in jail; that the officers came to their home, looking for Andrew, but that he had already gone; that the next day he telephoned from Gainesville, and inquired if any one had been looking for him; that she told him the police had been there asking for him, and that he said he would go further; that he wrote letters to her from Louisiana, and later from Alabama; that after he left she continued to live in Wichita Falls and ran a rooming house; that he came back home in August, 1918; that he stayed for a day or two; that he was afraid to stay longer, and left, and went to relatives in Gainesville and other points in North Texas; that he wrote her from said points, and also from Oklahoma; that he sent money for her support when he had it; that he worked at Henrietta, Tex., 18 miles from Wichita

Falls, from 1919 to 1921, inclusive; that during that time he visited home and she visited him in Henrietta; that she did his washing for him during that time; that he left Wichita Falls about October, 1922, and that she did not see him again until in 1924, but that he wrote to her during that time, and that she always knew where he was; that he came home in 1924, and stayed awhile, and told her where he had been working during his absence; that he visited their home in Wichita Falls again about August, 1925; that he spent one night there with her; that at all these times when they were together they lived as husband and wife. She further testified as follows: "No, sir; I never did file suit for divorce against Andrew Floyd in any court in any county. No, sir; I never received any citation from any court wherein Andrew Floyd had ever given me notice that he ever sued me for divorce. Yes, sir; Andrew Floyd has known where I have lived all the time since I have been his wife, up until the time of his death. I have never been divorced from Andrew Floyd."

There was also testimony that Andrew was in Rosebud working for the oil mill at various times during all the years from 1922 to 1925, inclusive. Rosebud is situated in Falls county. Appellee introduced testimony showing that there was no record of any divorce proceedings instituted by Andrew Floyd in said county. Appellee also introduced testimony that Andrew repeatedly declared that he was a married man, and spoke of his wife and children at Wichita Falls. The last such declaration was shown to have been made by him during the latter part of August, 1925, when on his way to Oklahoma. He sent to Rosebud for appellant, and married her in Oklahoma on September 5, 1925. Appellant introduced testimony of declarations by Andrew that he was a single man and that he had been divorced. She also introduced testimony tending to show that Andrew did not come to Rosebud until the fall of 1924. She herself testified: "Yes, sir, I know of my own knowledge that Andrew Floyd was a single man when he married me. When I married Andrew Floyd, I did believe he was a single man at that time."

■ The law, in deference to the presumption of the innocence of Andrew Floyd and the regularity of his ceremonial marriage to appellant, indulges the further presumption that his prior marriage to appellee had been dissolved by divorce before his marriage to appellant. Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 412, 19 S. W. 560; Holman v. Holman (Tex. Com. App.) 288 S. W. 413, 414, 415. Such presumption, however, was rebuttable, and the effect thereof was to cast upon appellee the burden of adducing evidence to the contrary. She was not, however, required to establish absolutely nor to a moral certainty the negative fact that her marriage to Andrew had not been dissolved by divorce; but the requirements of the law were met if she introduced sufficient evidence, standing alone, to negative such dissolution. If she did so, the weight of the same, considered in connection with any evidence to the contrary, was a question for the jury. 38 C. J. p. 1330 (top first column); Id. pp. 1343, 1344, § 115; Brokeshoulder v. Brokeshoulder, 84 Okl. 249, 204 P. 284, 287–290, pars. 1–3, and 291–296, par. 5, 34 A. L. R. 441, and authorities there cited; Schmisseur v. Beatrie, 147 Ill. 210, 35 N. E. 525; McCord v. McCord, 13 Ariz. 377, 114 P. 968, 970, 971.

■ The laws of this state require that the plaintiff in a divorce suit shall have been an actual bona fide inhabitant thereof for a period of 12 months, and shall have resided in the county in which suit is brought for 6 months, immediately preceding the filing of the same. In the absence of allegation and proof to the contrary, the laws of other states are presumed to be the same. There was testimony in this case sufficient, if believed by the jury, to negative any inference that Andrew Floyd might have become a bona fide inhabitant of any of the states he visited prior to his marriage to appellant, and so continued for the period of one year. Appellee testified that she never filed suit for divorce, and that she was never served with citation in any suit for divorce brought by Andrew. Before he could have secured the issuance of a citation for service by publication in a suit for divorce in this state, he would have been required to swear that appellee was a transient person, that her residence was unknown to him, that she was a nonresident of this state, or that she was absent therefrom. Appellee's testimony shows affirmatively that such an affidavit would have been untrue. Such an affidavit would therefore have constituted a fraud upon the jurisdiction of any court in which he might have filed a suit for divorce.

Appellee's testimony shows that Andrew continued his visits to her and marital relations with her until within less than a month of his marriage to appellant, and that no ground for divorce existed. The testimony shows with reasonable certainty that the only places in this state at which Andrew resided continuously for a period of six months were Henrietta and Rosebud. The circumstances of his residence in Henrietta, the proximity of that place to his former home, and appellee's testimony with reference to mutual visits to each other and the continuance of marital relations between them during the whole of such time, were sufficient to support an inference that he did not procure a divorce from appellee in that county. There was affirmative testimony tending to show that Andrew had resided at Rosebud for three years prior to his marriage to appellant. No suit for divorce had been filed by him in that county. Appellant's request for a peremptory instruction was properly refused.

Harpold v. Moss, 101 Tex. 540, 542, 109 S. W. 928; Cartwright v. Canode, 106 Tex. 502, 507, 508, 171 S. W. 696; Progressive Lumber Co. v. Marshall & E. T. Ry. Co., 106 Tex. 12, 14, 155 S. W. 175; Eastham v. Hunter, 98 Tex. 560, 565, 86 S. W 323; Burroughs v. Smith, (Tex. Civ. App.) 294 S. W. 948, 950–952 (writ refused); Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315 (writ refused).

██ Appellant presents propositions complaining of the action of the court in refusing to render judgment awarding her one-half of the compensation owed by the insurance carrier on account of the death of Andrew Floyd, notwithstanding the finding of the jury that he had never been divorced from appellee, thereby establishing that her marriage to him was in fact invalid. This contention is based on a holding of our Supreme Court that a woman who marries a man in good faith, believing him to be single and capable of contracting a valid marriage, and continues to live with him under such belief until his death, is entitled as a putative wife to one-half of the property acquired during such relation. Such rule is stated by our Supreme Court in Barkley v. Dumke, 99 Tex. 150, 153, 87 S. W. 1147, Lee v. Lee, 112 Tex. 392, 398, 399, 247 S. W. 828, and other cases cited. The beneficiaries of compensation insurance are designated by law. Section 8 of article 8306 of our Revised Statutes provides for the payment by the insurance carrier of certain benefits in case of the death of an employee covered by its policy. Section 8a of said article, so far as applicable in this case is as follows:

"The compensation provided for in the foregoing section of this law shall be for the *sole and exclusive benefit* * * * of the wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, * * * without regard to the question of dependency, * * * and the amount recovered thereunder shall not be liable for the debts of the deceased nor the debts of the beneficiary or beneficiaries * * * provided the right in such beneficiary or beneficiaries to recover *compensation for death* be determined by the facts that exist at the date of the death of the deceased *and that said right be a complete, absolute and vested one. Such compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries when the same are capable of taking under the laws of this state.* * * *" (Italics ours.)

Not only does the law designate appellee under the facts in this case as the beneficiary of the compensation to be paid on account of the death of her husband, but expressly declares that such compensation shall be for her sole and exclusive benefit, that her right thereto is complete, absolute, and vested, and that the same shall be paid directly to her, and shall not pass to the estate of her deceased husband.

We think the statute by express terms precludes participation by appellant as a putative wife in the compensation to be paid on account of the death of Andrew Floyd. See, in this connection, Fort Worth & Rio Grande Ry. Co., v. Robertson, 103 Tex. 504, 507, 510–515, 121 S. W. 202, 131 S. W. 400, Ann. Cas. 1913A, 231. Appellant asserted her claim to one-half of the compensation involved as the putative wife for the first time in her motion for new trial. Her petition contains no alternate plea, nor prayer for recovery on such theory. Neither does it contain an allegation that she married Andrew Floyd and lived with him as his wife until his death in good faith, believing her marriage to him legal. There was testimony tending to rebut appellant's claim of good faith. No such issue was submitted or requested. The claim so asserted was in the nature of a separate alternate cause of action, and, in the absence of a request for the submission of any issue or issues relating thereto to the jury for findings, it must be held to have been abandoned. Texas Employers' Ins. Ass'n v. Wright (Tex. Com. App.) 4 S.W.(2d) 31, 32, par. 3, and authorities there cited.

██ Appellee was a material witness in her own behalf, and as such testified with reference to statements by and transactions with her deceased husband. Appellant objected to all such testimony from her, on the ground that she was claiming compensation in this case as his heir, and was incompetent, under the provisions of article 3716, to testify with reference to such matters. The character of the compensation payable for the death of an employee under the provisions of our Workmen's Compensation Law was considered by the court in Texas Employers' Insurance Ass'n v. Boudreaux (Tex. Com. App.) 231 S. W. 756, 758. We quote from the opinion in that case as follows:

"The compensation awarded in this case is neither the community nor separate property of the deceased. It does 'not pass to the estate of the deceased to be administered upon,' but is payable directly to those to whom it is awarded. * * * When awarded for death of the employee, it is in substitution for damages ordinarily recovered by statute because of the death of the employee due to the negligence of the employer. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556. It is measured by the current wages of the deceased, and is to all practical purposes to supply to his beneficiaries the means of support which were afforded by his wages prior to his death."

See, also, Pullman Co. v. Ransaw (Tex. Com. App.) 254 S. W. 763, 765, par. 2.

While the statute provides that such compensation shall be distributed among the beneficiaries entitled thereto according to the laws of descent and distribution, such provision is

merely a rule of distribution. The right to such compensation and to participate in the distribution thereof does not accrue to them by inheritance, but by statutory designation. This is illustrated by the fact that stepmothers, who are not, under the provisions of our statutes of descent and distribution, heirs of their stepsons nor entitled to participate in the distribution of their estates, may in certain cases recover compensation for their death as statutory beneficiaries under the provisions of said law. It is further illustrated by the fact that adult children, grandparents, and brothers and sisters of the deceased employee, unless dependent, are excluded from receiving or participating in such compensation, and collateral kindred are entirely excluded therefrom. Appellant's objection to the testimony under consideration was without merit, and was properly overruled.

Appellant presents several propositions complaining of the argument of counsel for appellee. Appellee's testimony with reference to her husband's having left home on account of having gotten into trouble over his relations with a white woman has been hereinbefore set out. Appellee was permitted to further testify without objection that she had in her possession the picture of said woman and certain letters and telegrams. Her counsel offered to prove by her in this connection that, the day Andrew left home and just prior to his leaving, she saw him and said woman in a room together, and that he was embracing and kissing her. Counsel for appellant objected, and such testimony was excluded. Counsel for appellee further offered to prove in this connection that she found said picture, letters, and telegrams in her husband's grip; that said letters were addressed to him, and were in the handwriting of said woman, and offered said letters in evidence. Appellant again objected, and all said testimony was excluded. Counsel for appellee, in his closing argument, referred to the fact that such testimony was offered and excluded on objection of appellant's counsel, stated that he considered such excluded testimony highly important, and asked if the jury thought it was fair to appellee not to let the jury know about these matters.

Appellant's objection to said argument was that the same was improper, inflammatory, and highly prejudicial. The court instructed the jury at the time not to consider said statements with reference to the testimony that was excluded for any purpose. No written instruction on the subject was requested. The court's qualification to the bill shows that such argument was provoked, in part, at least, by argument of opposing counsel. The argument objected to was improper, and, except as it may have been invited by the argument of opposing counsel, wholly uncalled for. Whether indulgence in improper argument requires a reversal of the judg-

ment depends on the nature of the same, when considered in connection with the facts and circumstances in evidence, and whether, in view of the entire record, it was reasonably calculated to prejudice the jury in their consideration of issues affecting the rights of the complaining party. Argument may be so improper, inflammatory, and prejudicial as to require a reversal of the judgment, notwithstanding the court may sustain objection thereto and instruct the jury to disregard the same. Davis v. Hill (Tex. Com. App.) 298 S. W. 526, 528, par. 3, and authorities there cited. The general rule, however, is that, when an objection is made to improper argument, and such objection is sustained by the court, and especially when the court instructs the jury to disregard the same, the error is cured. Davis v. Hill, supra (Tex. Com. App.) 298 S. W. 527, 528, par. 4. We think the error of counsel in making before the jury the argument complained of by appellant was cured by the action of the court in sustaining objection thereto and instructing the jury to disregard the same. The fact that Andrew Floyd had an affair with a white woman and left home on account thereof was already before the jury. The excluded testimony bore on the degree of intimacy between them. We fail to see how the extent of his misconduct with said woman could reasonably prejudice the jury against appellant's claim that she was his lawful wife. There is no contention that appellant knew of any of these matters until after his death. Under such circumstances, we do not think the trial court abused his discretion in determining, under all the facts, that such improper argument was not reasonably calculated to affect the jury in passing upon issues submitted to them. Davis v. Hill, supra; Brazelton v. St. L. S. W. Ry. Co. (Tex. Com. App.) 296 S. W. 290, 291; Emberlin v. Wichita Falls, R. & Ft. W. Ry. Co. (Tex. Com. App.) 284 S. W. 539; Schmidt v. Houston Elec. Co. (Tex. Com. App.) 242 S. W. 1019, 1021.

Appellant further complains of the argument of appellee's counsel, because, in the course thereof, reference was made to a certain deposition which was not introduced in evidence. The statement of facts shows that on the trial a deposition was presented to appellee, and that she testified she signed and swore to the same on March 10, 1928. She was then asked if she did not make certain statements therein with reference to her correspondence with and knowledge of the whereabouts of her husband during the years preceding his marriage to appellant, and she answered that she did. Said deposition was not, however, introduced in evidence. Assuming knowledge of the contents of said deposition on the part of appellant's counsel, counsel for appellee argued that, if the white woman had not been arrested and put in jail, as appellee without objection had testified, appellant would have produced evidence to

disprove that fact; that appellant could have gotten the records of Clay county, in which the city of Henrietta is situated, to show that Andrew Floyd secured a divorce when he resided there, if he had done so; that he could not have gotten a valid divorce in Texas .without citation to appellee; and that he committed bigamy in marrying appellant. No objection was made to any of said argument at the time.

Our Supreme Court, in the case of Moore v. Moore, 73 Tex. 382, 394, 11 S. W. 396, 401, in discussing the effect of argument not objected to at the time, said: "It is peculiarly the office of an objection or exception of this character that it shall be made at the time of the act complained of, in order that the evil may be promptly remedied, and which it is to be presumed would be unhesitatingly done. But to allow without objection the continuation of such a line of argument would in some cases enable a party to take the chance of a favorable verdict, and which if adverse to him could be set aside upon objections which if promptly made would have resulted in a correction by the court. If as contended by appellant erroneous views of the law may have been expressed by counsel in argument, this of itself would be no grounds for a reversal."

Where no objection is made at the time, the improper argument must be plainly prejudicial to authorize the court to set aside the verdict on motion for a new trial. G., C. & S. F. Ry. Co. v. Greenlee, 70 Tex. 553, 562, 8 S. W. 129; Moore v. Rogers, 84 Tex. 1, 2, 19 S. W. 283; Robertson v. Coates, 1 Tex. Civ. App. 664, 20 S. W. 875, 879 (writ refused); American Freehold Land Mtg. Co. v. Brown, 54 Tex. Civ. App. 448, 118 S. W. 1106, 1109, 1110 (writ refused), and authorities there cited. We do not think the argument complained of was such as to require the court of his own motion to restrain the same.

The trial court is necessarily vested with a large discretion in the matter of permitting, restraining, or controlling argument, especially in the absence of objection at the time, and his rulings in such cases will not be reviewed unless such discretion is abused. Fidelity-Phœnix Fire Ins. Co. v. Mumaw (Tex. Civ. App.) 287 S. W. 120, 121, and authorities there cited.

Appellant complains of alleged misconduct on the part of the jury. The only question of misconduct was raised on the hearing of the motion for new trial by the evidence of the juror Phillips, and was with reference to his consent that a negative answer might be returned to the issue of whether Andrew Floyd had been divorced from appellee prior to his marriage to appellant. The court charged the jury that the burden was on appellee to establish the negative of such issue. Said juror testified that he thought appellant ought to have the money, and that he first intended to answer said issue "Yes"; that he did not remember hearing any testimony about a divorce either way. On cross-examination, he recalled that testimony substantially as hereinbefore recited had been introduced. He further testified that, in finally agreeing to answer said question "No," he took into consideration his knowledge of and experience with negroes as a class; that they were not too strict in that way; that some of them married with divorces, and some without; that he wanted to do what was right, and did not intend to violate his oath to return a verdict on the evidence. He further stated that some of the jury said that appellant had to prove that Andrew had been divorced from appellee, and that he did not recall any testimony from her that he had.

Only one other juror was examined. He testified that the testimony on the issue of divorce was discussed, and that no misrepresentations were made concerning the same, and that no effort was made to mislead or improperly influence the juror Phillips. He further testified that he read the court's charge on the burden of proof to the jurors several times, that they might get the same clearly in their minds. He further testified that the juror Phillips finally voted to answer said issue "No." The testimony does not disclose any overt act of misconduct, such as is contemplated by article 2234 of our Revised Statutes. The mental processes or reasonings by which the juror Phillips reached his verdict, however faulty, illogical, or improper, do not constitute such misconduct. Jurors, after they have returned their verdict, cannot be subjected to an inquisition in order to ascertain whether they disobeyed or misunderstood the charge of the court, or misunderstood or misapplied the facts in evidence. The evidence of the juror Phillips, as presented on the hearing, amounted to not more than attempt to impeach his verdict, which is not permissible, in the absence of some overt act of the character contemplated by said article of the statutes. Bradley v. Texas & Pacific Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861, 863, 864, and authorities there cited; Caylat v. Houston, E. & W. Tex. Ry. Co., 113 Tex. 131, 136–138, 252 S. W. 478; Chandler v. Wiemers (Tex. Civ. App.) 4 S.W.(2d) 569, 571, par. 4, and authorities there cited.

Appellant has presented 47 separate propositions as grounds for reversal. We have considered all said propositions, and are of the opinion that none of them require a reversal.

The judgment of the trial court is therefore affirmed.