## WINDER v. CONSOLIDATED UNDERWRITERS.

### No. 891.

District Court, N. D. Texas, Wichita Falls Division.

Dec. 1, 1938.

Napier & Napier, of Wichita Falls, Tex., for the motion.

T. R. Boone and E. T. Duff, both of Wichita Falls, Tex., opposed.

ATWELL, District Judge.

The Texas Compensation law, Vernon's Ann.Civ.St.Tex. art. 8306 et seq., embodies a scheme for the writing of insurance for the benefit of employees; it provides who shall be beneficiaries. It defines "legal beneficiaries" to be such beneficiaries as are named in Section 8a, art. 8306, 1928 Texas Statutes, Vernon's Ann.Civ.St.Tex. art. 8306, § 8a; art. 8309, Pt. 4, Vernon's Ann. Civ.St.Tex. art. 8309. That section provides that the "compensation * * * shall be for the sole and exclusive benefit of surviving * * * wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, and of * * * parents * * * without regard to the question of dependency, * * *."

The facts of this case disclose that the plaintiff, Winder's, first husband died. She then married Butts. In 1924, according to her testimony, while they were residing in Colorado, Butts abandoned her, She returned to Texas, and in 1931 married Winder, believing at that time that Butts had divorced her. She also claims the benefit of the presumption of his death. Winder was accidentally burned to death while an employee of the Bishop Oil Company, in January, 1938. She brought suit as his wife under the compensation law.

While the proceeding was pending, the insurance company ascertained that Butts was still living, and upon an interview with him was unable to discover any divorce. Butts claimed that he had been drinking heavily for many years, and roving around in the Northwestern states. That he had a faint recollection of having had a court proceeding, but did not know whether he was ever granted a divorce. She said she had visited him a short time before his deposition was taken.

Mrs. Winder testified that she had received from him a paper which she called a waiver, and later, a paper which she called·a divorce. She claimed that both of those papers were destroyed in her home when it was burned, but she was unable to give the contents of either paper. She testified that she believed she was divorced, and so believing, married Winder.

At the conclusion of the testimony, the defendant moved for an instructed verdict, which motion the court granted.

Being dissatisfied, I asked for re-argument.

■ It would seem that Mrs. Winder's belief entitles her to be classed as a putative wife, The good faith, the marriage ceremony, and the subsequent coverture brings her within that classification.

Does such a status entitle her to be the statutory beneficiary classed as "wife?"

■ The public policy of the state, as disclosed in its divorce laws, legislation with reference to the solemnization of marriages, and other legislation unnecessary to here mention, supports the thought that the single word "wife" means a spouse securing her status from the ability to make a valid marriage contract. Every requirement seems to point to this prerequisite. One who has a living husband, undivorced, has no legal right to contract another marriage. One who is married is not divorced by belief. Divorce may be secured by the wife for three years' abandonment, or where she and her husband have lived apart for ten years without cohabitation. Art. 4629, Texas Stat.1928, Vernon's Ann.Civ. St.Tex. art. 4629.

■ The defendant insurance company bound itself to pay such benefits as the compensation law provided. Its contract ran to Winder's wife—wife, as it is understood under the Texas laws—the wife who became such by reason of a valid contract with him. See Beebe v. Moormack Gulf Lines, 5 Cir., 59 F.2d 319.

■ Marriage may be celebrated between persons legally authorized to marry. Art. 4602, Texas Stat.1928, Vernon's Ann.Civ.St.Tex. art. 4602. One who has a husband is not legally authorized to marry. Presumption of death is destroyed by finding the person alive.

■ Ordinarily, this court would be greatly assisted by the declarations and decisions of the state courts which would be controlling since it is a state statute, and the state courts' construction thereof would be binding on a national court sitting in the state. Unfortunately, there appear to be no direct decisions upon the question. But the following cases contain expressions which, I think, justify the conclusion that some of the appellate courts of Texas look at this question as I have indicated. Such cases are: Fort Worth & Rio Grande Railway Company v. Robertson et al., 103 Tex. 504, 121 S.W. 202, 131 S.W. 400, Ann. Cas.1913A, 231, by the Supreme Court. In that case it was determined that the putative wife who had innocently and in good faith married one having a former wife living and undivorced, had no interest, on his death, in his cause of action for personal injuries, which, by the terms of the statute, survived in favor of his heirs and legal representatives.

In Green v. Green, 235 S.W. 980, Judge Fly, speaking for the Court of Civil Appeals, said that [page 982], "If Catherine abandoned her husband for three years, and could not recover, that fact would not constitute the woman of the last marriage a beneficiary, because she would not be a wife."

Floyd v. Fidelity Union Casualty Company, Tex.Civ.App., 13 S.W.2d 909, held that under sections 8 and 8a of the Compensation Act involved here, compensation shall not pass to the estate of deceased, woman, claiming to be decedent's wife in suit to set aside compensation awarded another, found to be the wife of decedent, because she was precluded from participating as putative wife in the compensation to be paid on account of employee's death. The case is approved by Commission of Appeals in 24 S.W.2d 363.

In the case of Sanchez v. Texas Employers' Insurance Association, Tex.Civ. App., 51 S.W.2d 818, there are disclosed four wives for Pedro Sanchez. The first one he had legally married, and upon his death she still survived. The other three were putative wives, the first of whom was dead. Rebecca and Florencia survived him as such putative wives. He and Rebecca had separated, immediately after which he and Florencia began living together as man and wife, and some four years later were married. She continued to live with him, and after his death, paid all of the expenses incident thereto. Upon this state

it was held that Rebecca was not entitled to receive compensation and that the wife's share should be payable to his first and only legal wife, or, to Florencia, his "putative" wife, and that since his first and only legal wife had made no claim for compensation, Florencia was the only one who could lawfully claim or receive the same as his wife. Writ of error was granted in this case by the Supreme Court, but before it was ruled, a settlement was made and the court remanded it to the Court of Civil Appeals for the carrying out of that settlement.

Then came United States Fidelity & Guaranty Company v. Henderson, Tex.Civ. App., 53 S.W.2d 811, where it was held that, under the Compensation Act, illegitimate children are not beneficiaries of deceased employee. And where both parties had been previously married, neither was capable of contracting a second marriage, either ceremonial or common law, in absence of proof showing death of their respective spouses, or dissolution by divorce. This case is not very helpful because the evidence showed that the wife was neither putative nor was there any common law marriage between the deceased employee and the woman.

Cases which save children from illegitimacy, and which dispose of property, as community, between a man and a woman who are not legally married, do not help us in this quandary. They relate to matters which do not arise out of contract with a third party, and are ruled for and by the rules of decency and public policy.

The case of Holman v. Holman, Tex. Com.App., 288 S.W. 413, relied on by the plaintiff as pointing the order of proof and the weight of testimony is hardly thought to have that value. In the trial court the jury found that the woman, in that case, had procured a divorce from her first husband. That is not the state of facts here. Here the plaintiff was abandoned by her husband. Later she found him still living but not consorting with another woman, and there is no legal proof that there was any divorce. In the Holman Case, the truant husband returned to the county with another woman whom he held out as his wife, and with whom he lived as such. It was after that, that the common law marriage between his first wife and Holman was conducted, and children were born to that union. The case was for the distribution of the deceased Holman's property for the use of his common law wife and their children.

If a court may so stretch the word of a statute as to include within its meaning something that the ordinary significance of the word does not indicate, and does not permit, then the one who contracts with reference to that statute is at the mercy of such unpredictable construction, and does not have the benefit of the written word to guide him in the making of his contract.

 There is another point in this case that should not be overlooked. The statute denominates the "parents" as beneficiaries, and the testimony shows that the deceased's mother is living. She would be entitled to some recovery if she saw fit to assert her right.

No new trial will be granted.