### PRICE et al. v. TRAVELERS INS. CO.
### No. 5186.

District Court, N. D. Texas, Dallas Division.

Jan. 19, 1939.

Chrestman, Brundidge, Fountain, Elliott & Bateman, of Dallas, Tex., for plaintiffs.

Pinkney Grissom and Thompson, Knight, Baker, Harris & Wright, all of Dallas, Tex., for defendant.

ATWELL, District Judge.

John J. Ogden, while engaged in the regular course of his employment for an employer who had taken out compensation insurance under the Texas system, with the defendant, was killed. At the time of his death, he was living with a woman whose given name was Lottie, by whom there were two children. According to the testimony, he had not told Lottie that he had a living wife in the state of Colorado, and two children, and that he had two other children also living, by his first wife, who was deceased. Lottie believed that a ceremony in which she participated was a genuine ceremony, and that she was lawfully married.

Upon his death, she and her children claimed his compensation insurance, and they were paid the same in full, amounting to $7,200. These payments were made by the defendant without any notice of children by the first wife, nor of the second wife, Evelyn, who was still living, and her two children.

Ogden and Evelyn were living in the state of Colorado in 1923 and 1924. Ogden had been unable to secure employment, or,

at any rate, to retain employment, and Evelyn worked in a laundry and secured enough money for him to go to Texas where he thought he could secure employment, and then he would send for Evelyn and the four children. He left her with that purpose and promise, and she heard from him about a week later from Denver, in which letter he stated he was on his way to Texas.

Evelyn who was not strong, and who was ignorant of insurance matters, illiterate in schooling, and infirm in body, managed by hard work and effort to care for the four children. She worked in a laundry, and then secured a position as cook in a mining camp in Colorado where she cooked for from ten to twenty men for several years. Then she became a maid in a dentist's home in Denver, and later, in order to get a little more money, became a cook in a cafe in Grant, Nebraska.

She could get no information from her husband's people as to where he was. Finally, in 1926, she received a telegram from his parents, stating that he had been killed, or had died, in Texas, and that the body would be brought back to Colorado for burial. She wired flowers and asked for further particulars. She was unable to secure any information.

A year or two after that, she married an elderly man whose vision was impaired. He was a cattle buyer, and she would drive him around and assist him in carrying on that business. In 1937 his business took him to Colorado, and she went along, taking with her her younger child, thinking they might visit Ogden's parents and allow the child to see his grandparents. In due time they reached there and she then ascertained from another source something about Ogden's wife and children in Texas, and that they had secured some insurance. She thereupon employed an attorney, and that attorney, working with Texas attorneys, finally ascertained the facts as to Ogden's death.

In January, 1938, she filed claim for herself and children for his compensation insurance. In due time the cause reached this court.

The cause was tried to a jury, and after overruling the defendant's application for peremptory instruction, was submitted upon the one issue, i. e., whether Evelyn's failure to give notice within the time prescribed by the statute was excused, within the meaning of that portion of the statute which provides that, "For good cause, the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations to notice and the filing of the claim before the Board." The limitation as to notice is, that in death cases notice shall be given within six months. Vernon's Annotated Civil Statutes of Texas, art. 8307, § 4a.

The jury found for Evelyn. Thereupon, both Evelyn and Lottie presented their respective theories in motions for judgment. The court approved a judgment granting Evelyn $3,600, which is one-half of the amount recoverable under the agreement as to the weekly wage, and to each of her two children, $600. These items drawing interest at six percent from January 15th, 1938, the date of the filing of the claim. Lottie's two children had already been paid. The two children by Ogden's first marriage were not parties to the suit, and the testimony showed that they were each over twenty-one years of age. Evelyn and her two children claim that they are entitled to interest on the amounts apportioned to them from the date of Ogden's death. The defendant claims that Lottie was Ogden's putative wife, living with him at the time of his death, therefore, she was entitled to what she received, and that Evelyn should have no payment, or, that if she is entitled to anything, that it is but one-half of $3,600, since there were two wives.

Under the verdict of the jury and the distressing testimony showing the heroic struggle of Evelyn as the devoted wife and mother, through years of privation, ill health and dogged determination to care for her children, as well as the two other children which were left with her, there is no legal way to deprive her of her statutory rights as the lawful wife of Ogden.

The statute, Sec. 8a, Art. 8306, 1928 Texas Statutes, Vernon's Annotated Civil Statutes of Texas, Art. 8306, § 8a, provides that the compensation is for the sole and exclusive benefit of the surviving wife, and of parents, without regard to the question of dependency. Evelyn was his wife. It is repugnant to our sense of the responsibility that rests upon the husband, and our sense of public decency, under the Texas system, to permit the husband to defeat the statutory right of his wife to these compensation benefits, by taking another woman into his life, however innocent the other woman may be, herself. There could

have been no consummation of marriage between Ogden and Lottie, because of the legal impediment which Evelyn's existence presented. Any attempt to make an agreement for marriage so long as that impediment did exist was of no effect. Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229.

This court expressed the belief in Winder v. Consolidated Underwriters, 25 F.Supp. 451, that the word "wife" in the compensation statute means "legal wife." Among the cases reviewed in that opinion is Fort Worth & Rio Grande Railway Co. v. Robertson et al., 103 Tex. 504, 121 S.W. 202, 131 S.W. 400, Ann.Cas.1913A, 231, by the Texas Supreme Court, in which it was determined that a putative wife who had innocently and in good faith married one having a former wife living and undivorced had no interest, on his death, in his cause of action for personal injuries, which by the terms of the statute survived in favor of his heirs and legal representatives.

The defendant's contract runs to the wife of Ogden—the wife who became such by reason of a valid contract with him. See Beebe v. Moormack Gulf Lines, 5 Cir., 59 F.2d 319.

Whatever looseness may appear in the Texas decisions with reference to the distribution of property made by a man and woman living together without being legally married, relates to the legitimatizing of resultant children and the distribution of property acquired under such status. Cases of that sort are, Mendez v. Sovereign Camp, Tex.Civ.App., 269 S.W. 142; Mendez v. Mendez, Tex.Com.App., 277 S.W. 1055; Barkley v. Dumke, 99 Tex. 150, 87 S.W. 1147; Texas Employers' Ins. Ass'n v. Boudreaux, Tex.Com.App., 231 S.W. 756; Lee v. Lee, 112 Tex. 392, 247 S.W. 828, 829.

The rights under this particular statute, when there is a legal wife, may not be distributed between her and a putative or a common law wife. She is the sole beneficiary. Any other holding would suffer the conclusion that polygamy is, to some extent, permitted in Texas.

I think this view is supported by such Texas cases as, Green v. Green, Tex.Civ. App., 235 S.W. 980; Floyd v. Fidelity Union Casualty Company, Tex.Civ.App., 13 S.W.2d 909; Sanchez v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 51 S.W.2d 818; United States Fidelity & Guaranty Company v. Henderson, Tex.Civ.App., 53

S.W.2d 811; Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229.

Judgment will stand for Evelyn and her two children.