### WOODS v. HARDWARE MUT. CASUALTY. CO. et al.
### No. 8923.

Court of Civil Appeals of Texas. Austin.
June 5, 1940.

Rehearing Denied June 26, 1940.

974

Wallace & Wallace, of Cameron, for appellant.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellee Hardware Mut. Casualty Co.

O. L. Kidd, of Cameron, for appellee Penola Woods.

BLAIR, Justice.

This litigation arose in connection with the workmen's compensation insurance of James Woods, a negro workman who was killed in the course of his employment with Sapp Motor Company, the insured. Appellee, Hardware Mutual Casualty Company, the insurer, admitted liability for his death and paid one-half of the insurance to the minor children of the deceased. A controversy arose, however, between appellant, Ina Woods, and appellee Penola Woods, as to which one of them was the widow of James Woods, deceased, and entitled under the Workmen's Compensation statutes to the remaining one-half of the insurance. Each of them filed a claim with the Industrial Accident Board to be awarded the compensation insurance. Ina appealed from the award of the Board; and at the conclusion of the evidence the trial court instructed the jury to find Penola to be the widow of James Woods, deceased, and judgment was accordingly rendered awarding her the insurance in question; hence this appeal.

Ina (appellant) introduced in evidence a marriage license and the minister's return thereon, showing her marriage as Ina Murphy to James Woods (the deceased) on August 27, 1930. She testified that before her marriage to him she knew he had been married to Penola (appellee), but he told her that Penola had filed suit and obtained a divorce from him; and that she married him in good faith believing that he was divorced, and continued to live with him as his wife until his death.

Penola (appellee) introduced in evidence a marriage license and the minister's certificate thereon, showing her marriage as Penola Johnson to James Woods (the deceased) on June 30, 1923. She testified that in the fall of 1927, James Woods sold their household furniture and sent her and their two small children to the home of her parents, and told her that he was going to the home of his parents; and that they never lived together thereafter, her parents supporting her and children without any aid of her husband. She further testified that in December, 1927, she filed suit for divorce against said James Woods in the District Court of Milam County, paid her lawyer and thought that when she paid her lawyer the divorce was granted. The Clerk of the court exhibited the dockets, records, and minutes of the court, showing that the divorce suit had been filed but that the divorce had not been granted, and that the case was still pending on the docket as a "live case." The lawyer who filed the suit died in 1934. The Clerk's record showed that the costs, including costs of a final judgment, had been paid. Penola further testified that she thought her divorce had been granted, and that she married Brown Stennett, by ceremonial marriage in December, 1928, and lived with him as his wife and bore him children; but that he later divorced her and that she had not married again.

The evidence is undisputed that all of the parties involved in the aforementioned marriages lived in Cameron, Texas, knew each other and knew of the several marriages mentioned; and that no divorce proceedings other than above mentioned were filed in Milam County where all of the parties continuously lived, except for short trips to the west to pick cotton, or to other places looking for work. Both Ina and Penola, in good faith, believed that Penola had obtained a divorce from James Woods in her suit, before Ina's marriage to him and before Penola's marriage to Brown Stennett, and that neither of them knew that the divorce had not been granted until after the death of James Woods, when the question of his insurance arose.

Appellant offered the testimony of Brown Stennett, excluded on objection of appellee, to the effect that he and Penola agreed to get married, but that both were married to other parties. That they went together to a lawyer's office and employed him to get their respective divorces. That he paid the lawyer's fee and court costs in both cases. The records of the District Court of Milam County show that his suit for divorce and the aforementioned suit by Penola for divorce were filed the same day by the same lawyer. Stennett further of-

fered to testify that in January, 1928, both he and Penola appeared in the court and that a hearing was had of their respective divorce cases, and that the judge announced the granting of Penola's divorce first, and then granted his divorce. The record fully sustains by docket entries and formal judgment the granting of the divorce of Brown Stennett; but contains no entries or minutes showing any action of the court in the case filed by Penola against James Woods, the deceased. This testimony as to the judge's announcing the granting of Penola's divorce was excluded upon the objection of appellee that a judgment of a court of record could not be proved by parol or other extrinsic evidence in this a separate suit.

Under the above stated facts and proceedings, appellant presents the following related questions for determination:

1. That the testimony of Brown Stennett was erroneously excluded, and if admitted it and other facts and circumstances in the record would have raised a jury question as to whether Penola had been actually divorced from James Woods prior to the time he married Ina.

2. That Ina was shown to be at least the putative wife of James Woods at the time of his death, and entitled to one-half of the insurance or benefits in suit under the terms of Art. 8306, Secs. 8 and 8a, of the Workmen's Compensation Laws of Texas.

3. That in any event Penola was estopped to deny the validity of Ina's marriage to James Woods under an irrefutable presumption that Penola had been legally divorced from James Woods, arising from the fact of her subsequent marriage to Brown Stennett and the subsequent judgment granting him a divorce from her.

██ The records of the District Court showed that no decree of divorce had been actually entered in the suit of Penola against James Woods for divorce; and that said suit, on which all parties relied and in good faith believed that the divorce had been granted to Penola, was still pending as a live case on the docket of the court. Appellant could not in this separate and different suit prove by the oral or extrinsic testimony of Brown Stennett that an oral judgment had been announced by the trial judge granting to Penola a divorce in her said suit. The record of such a judgment is the best evidence thereof. It can be proved only by the original instrument or a duly certified copy thereof, unless the record has been lost or destroyed. Where no record of the judgment has ever been made, its absence or proof that it was actually rendered may not in another suit be supplied by oral or extrinsic proof. In such a case the proper procedure is to proceed in the court in which the claimed judgment was rendered to have it entered nunc pro tunc, and, when properly recorded, such judgment will be available as evidence in another suit. Wallis v. Beauchamp, 15 Tex. 303; Brown v. Reese, 67 Tex. 318, 3 S.W. 292; Turley v. Tobin, Tex.Civ.App., 7 S.W.2d 949, error refused. Since the oral or extrinsic testimony of Brown Stennett was not admissible to show that Penola was granted a divorce by the oral announcement of the judge of the court in which the case was pending, it necessarily follows that such testimony raised no jury question as to whether Penola had actually been divorced from James Woods. Nor was there any testimony raising a jury question as to whether Penola had been granted a divorce in any other suit or county. Penola testified that she filed only this one suit for divorce and thought that when she paid her lawyer the divorce was granted; but that she never appeared in court in the matter; and that she was never away from Milam county, except on short cotton picking trips. Ina testified that James Woods told her that Penola had sued for and obtained a divorce against him before their marriage; and from all the evidence, most of which is not controverted, it was conclusively shown that all parties relied only upon and in good faith believed that Penola had been granted a divorce in her aforementioned suit.

██ It is true that the subsequent marriage of Penola to Brown Stennett, and his subsequent divorce from her raised a presumption of fact that Penola had been previously divorced from James Woods; but such presumption, however, was merely a rebuttable one, and was conclusively rebutted or disproved by the records of the District Court showing that the divorce had not been granted in the case of Penola in which both women thought it had been granted. The fact that both women in good faith believed that Penola had been granted a divorce did not have the effect of granting a divorce. Floyd v. Fidelity Union Casualty Co., Tex.Civ.App., 13 S.W. 2d 909, 913; Moore v. Wooten, Tex.Com.

App., 280 S.W. 742; Emory v Bailey, 111 Tex. 337, 234 S.W. 660, 18 A.L.R. 901; American Surety Co. v. Cross, Tex.Civ. App., 80 S.W.2d 470. And since no divorce had been granted to Penola from James Woods in the suit relied upon by all parties, he could not contract a legal marriage with Ina, and she was therefore shown to be only his putative wife at the time of his death; and the next related question presented is whether as such putative wife Ina may recover the insurance or benefits in suit under the terms of the Workmen's Compensation Laws of Texas.

Whether a putative wife may recover the insurance or benefits resulting from the death of the putative husband is controlled by a construction of Art. 8306, Secs. 8 and 8a, of the Workmen's Compensation Laws; which specifically name the beneficiaries who are entitled to recover such insurance or benefits. Sec. 8 provides that in case of death of the husband, the insurance or benefits arising shall be paid. Sec. 8a specifically provides to whom the insurance or benefits shall be paid, the material portions reading as follows: "The compensation provided for in the foregoing section of this law shall be for the sole and exclusive benefit * * * of the wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, * * * without regard to the question of dependency, * * * and the amount recovered thereunder shall not be liable for the debts of the deceased nor the debts of the beneficiary or beneficiaries * * * provided the right in such beneficiary or beneficiaries to recover compensation for death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one. Such compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries when the same are capable of taking, under the laws of this State."

With respect to the character of compensation or rights conferred by this statute, the court in the case of Texas Employers' Ins. Ass'n v. Boudreaux, Tex.Com. App., 231 S.W. 756, 758, say: "The compensation awarded in this case is neither the community nor separate property of the deceased. It does 'not pass to the estate of the deceased to be administered upon,' but is payable directly to those to whom it is awarded. * * * When awarded for death of the employé, it is in substitution for damages ordinarily recovered by statute because of the death of the employé due to the negligence of the employer. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556. It is measured by the current wages of the deceased, and is to all practical purposes to supply to his beneficiaries the means of support which were afforded by his wages prior to his death. Its payment is provided for 'from week to week as it accrues,' except in special cases. The right of the deceased to have compensation paid his beneficiaries in case of his death was acquired by him during coverture. His wages flowing from his contract of employment under which he was working at the time of his death were community property. The compensation measured by his community wages and having its source, as it were, in the same contract of employment, partake more nearly of the nature of community than of separate property; and it should be distributed, in our opinion, according to the statute of descent and distribution applicable in distributing community property. Under this statute the apportionment provided is one-half to the wife and one-half to the children. Article 2469, R.S.1911. Only two of the children being beneficiaries, the proportion should be, as between the wife and children, one-half to the former and one-fourth each to the latter."

In the case of Floyd v. Fidelity Union Casualty Co., Tex.Civ.App., 13 S.W. 2d 909, 913, the court, after quoting the above language of the statute and a part of the above quotation from the Boudreaux case, held that "the statute by express terms precludes participation by * * a putative wife in the compensation to be paid on account of the death" of the employee putative husband. In so contruing the statute in suit the court followed the analogy of the decision in the case of Ft. Worth, etc., R. Co. v. Robertson, 103 Tex. 504, 55 Tex.Civ.App. 309, 121 S.W. 202, 204, 131 S.W. 400, Ann.Cas.1913A, 231, wherein the Supreme Court held that a putative wife, who innocently and in good faith married a man having a former undivorced wife, had no interest on his death in his cause of action for personal injuries, which, by the terms of Art. 3353a, Sayles' Statutes 1897 (now Art. 5525, Vernon's Ann.Civ.St.) survived in favor of his heirs and legal representatives. In the Robertson case the decisions relating to the rights of a putative

wife were reviewed at length, and the court specifically limited her rights, holding that "under repeated decisions of our higher courts, it is a settled principle of law that, when a marriage is held to be unlawful, the putative wife, who has assumed and sustained that relation, believing in good faith the marriage to be lawful, will be entitled to one-half of all property acquired by the joint labors of the two, even in the absence of proof of the extent of labor contributed by each." The court further declared that "no case has been found holding that property not acquired by the joint labors of the partners of a putative marriage would be owned by them jointly, even though the· same might be the community property of the husband and his lawful wife under article 2968" (now Art. 4619, Vernon's Ann.Civ.St.). And the court further held that a cause of action for personal injuries of Robertson was not property acquired by the joint labors of himself and his putative wife who was living with him at the time he received such injuries; and under this holding the damages or compensation for personal injuries which resulted in the death of James Woods was not property acquired through the joint labors of the putative wife; and in consequence the· putative wife has no interest in such damages or compensation under the Workmen's Compensation Laws.

■ But appellant contends that since Sec. 8a above quoted provides that compensation or benefits arising out of the death of the husband "shall be distributed among the beneficiaries as may be entitled to the same as hereinbefore provided according to the laws of descent and distribution of this State," and since the court has held that such compensation or benefits partake of the nature of community property, the putative wife, who in ignorance of the former marriage, should be entitled to recover the benefits, as in case of partnership property acquired by the joint labors of the partners. This same contention was made in the Floyd case, and was overruled by the court as follows: "While the statute provides that such compensation shall be distributed among the beneficiaries entitled thereto according to the laws of descent and distribution, such provision is merely a rule of distribution. The right to such compensation .and to participate in the distribution thereof does not accrue to them by inheritance, but by statutory designation. This is illustrated by the fact that

stepmothers, who are not, under the provisions of our statutes of descent and distribution, heirs of their stepsons nor entitled to participate in the distribution of their estates, may in certain cases recover compensation for their death as statutory beneficiaries under the provisions of said law. It is further illustrated by the fact that adult children, grandparents, and brothers and sisters of the deceased employee, unless dependent, are excluded from receiving or participating in such compensation, and collateral kindred are entirely excluded therefrom."

A writ of error was granted in the Floyd case and the judgment of the Court of Civil Appeals was reversed, Tex.Com.App., 24 S.W.2d 363, 364, upon the ground of improper argument of counsel for appellee; but in reversing the case for another trial the Supreme Court stated that "all questions· were correctly decided by the Court of Civil Appeals (13 S.W.2d 909), in view of the jury's findings on special issues submitted to them, unless the assignment of error complaining of improper argument by. counsel for the successful party should have been sustained." Thus the court directed that the new trial be in accordance with the decision of the Court of Civil Appeals on the merits of the case; and the suggestion that the putative wife question had not been properly raised in the Floyd case is immaterial, because it no doubt would be properly raised on the new trial; and would be controlled by the opinion of the Court of Civil Appeals on the merits of the case. It may also be noted that the wife and her right as involved in the Boudreaux case, Tex.Com. App., 231 S.W. 756, were those of a lawful wife rather than a putative wife, and in consequence the question of proper distribution of the compensation or benefits under the statute in question as to a lawful wife was alone determined.

■ The following cases hold either specifically or in effect that the word "wife" as used in the above quotation of the Workmen's Compensation Laws means "lawful wife," and that a putative wife cannot qualify as a beneficiary under said laws: Green v. Green, Tex.Civ.App., 235 S.W. 980, writ dismissed; Floyd v. Fidelity, etc., Co., Tex.Civ.App., 13 S.W.2d 909, ·holding approved by Supreme Court, 24 S.W.2d 363, 364; Winder v. Consolidated Underwriters, D.C., 25 F.Supp. 451; Price v. Travelers, etc., Co., D.C., 24 F.Supp.

894; Winder v. Consolidated, etc., Co., 5 Cir., 107 F.2d 973; Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W. 2d 229. The only workmen's compensation case cited or found which seems to hold that a putative wife might recover compensation or benefits arising from death of the de facto husband is that of Sanchez v. Texas Employers' Ins. Ass'n, Tex.Civ. App., 51 S.W.2d 818, in which a writ of error was granted, and it was settled before any decision by the Supreme Court.

In the cases of Mendez v. Mendez, Tex. Com.App., 277 S.W. 1055, and Lee v. Lee, 112 Tex. 392, 247 S.W. 828, cited by appellant, the court had under consideration private insurance contracts, which were either payable to the putative wife, or were declared to be community property acquired during the putative relationship. These cases are not in point.

Several cases construe other statutes of this State in which the word "wife", or the term "for the sole and exclusive benefit of the * * * surviving wife", or the term "legal heirs" is used, and each of them hold that "wife" means "lawful wife" as distinguished from putative wife. Lopez v. Missouri, K. & T. R. Co., Tex. Civ.App., 222 S.W. 695; Chapman v. Chapman, 11 Tex.Civ.App. 392, 32 S.W. 564, writ denied; Ft. Worth, etc., R. Co. v. Robertson, supra.

■ The last related question presented is whether Penola is estopped to deny the validity of Ina's marriage to James Woods under an irrefutable presumption that Penola had been legally divorced from James Woods, arising from the fact of her subsequent marriage to Brown Stennett and the subsequent judgment granting him a divorce from her. As held herein the presumption of divorce was conclusively rebutted or disproved. Such presumption of divorce is not an irrefutable one, and the uncontroverted and conclusive evidence showed that the divorce had not been granted. The question of estoppel is no greater in this case than in the cases above cited. They all hold that before equity will aid the putative wife she must be innocent of any knowledge of the former marriage of the de facto husband. In the instant case, both parties in good faith believed that Penola had been granted a divorce. But neither estoppel nor good faith belief could grant the divorce; and in consequence Ina could not be the surviving wife. The statute does not make the putative wife a beneficiary. Nor can estoppel repeal the statute by implication or incident, which makes the legal wife the beneficiary. If so, then as stated in the Robertson case, what incidents of a lawful marriage should attach to a putative marriage? The Supreme Court asked this question: "If some of the statutory incidents of a lawful marriage contract are to be held incidents of a putative marriage contract also, I can perceive no valid reason why all of those incidents should not so attach, and thus give the putative wife the right to plead coverture against her contracts other than for necessaries and for the benefit of her separate estate, an inheritable interest in the separate estate of the husband, homestead rights and all other rights given by statute to a lawful wife. If some of these rights are to attach to the putative marriage contract as incidents thereto, and others denied, where shall the boundary line be drawn between such as do and such as do not so attach?" The court answered this question by holding that the innocent and good faith putative wife was not the surviving wife within the meaning of the similar statute to that in the instant case. To the same effect are the Green and Floyd cases, above, both of which are workmen's compensation cases.

■ The remaining question raised by appellant is that Penola had abandoned James Woods for a period of more than three years without good cause, and was therefore precluded by the statute from sharing in the insurance or benefits in suit. Since, as herein held, Ina, the putative wife, had no interest in the compensation or benefits, she had no interest in the question of whether Penola had without good cause abandoned James Woods. Neither the insurance company nor the guardian ad litem for the minor children of James Woods raised this question, and the Green case concludes the question against appellant, as follows [235 S.W. 982]: "In this case there was no technical abandonment by Catherine of her husband; but if, on a further development of the facts of the case it should appear that she had by her cruelty or indifference to his sickness driven him off, it might preclude her from a recovery of the award, even though she was legally married to him. However, if there was a legal marriage in Waco, there could have been no second legal marriage, and Louisa could not recover. If Cath-

erine abandoned her husband for three years, and could not recover, that fact would not constitute the woman of the last marriage a beneficiary, because she would not be a wife."

By analogy of question and decision thereon, in the opinion of the Supreme Court in the Robertson case, above, the court say: "Although Mrs. Maggie Robertson acted in perfect good faith in her attempted marriage to J. P. Robertson, yet, as it was conclusively shown that he was never divorced from Mrs. Annie Budd, and therefore was legally incapable of contracting a second valid marriage, it follows that Mrs. Maggie Robertson was never the lawful wife of J. P. Robertson. For the same reason Mrs. Annie Budd never changed her legal status, as the lawful wife of J. P. Robertson, by her attempted marriage with John Budd; and the fact that she has not seen fit to become a party to this suit and ask for damages for the injuries in controversy sustained by J. P. Robertson does not affect the question as to whether or not Mrs. Maggie Robertson is entitled to recover. If Mrs. Maggie Robertson was not the lawful wife of J. P. Robertson, then in no sense was she his heir, within the meaning of Sayles' Ann. [Texas] Civ.St. 1897, art. 3353a."

The judgment of the trial court will be affirmed.

Affirmed.